**UNITED STATES of America,**
**Appellee,**

v.

**Arondus Lee WILSON, Appellant.**

**No. 71–1318.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 23, 1971.

Decided Oct. 13, 1971.

---

George William Birkhead, Norfolk, Va. (Court-appointed) [Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief], for appellant.

John A. Field, III, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Senior Circuit Judge, and WINTER, Circuit Judge.

SOBELOFF, Senior Circuit Judge:

By this appeal Arondus Wilson attacks a sentence of imprisonment for three years imposed upon him following his plea of guilty to a charge of forging an endorsement on a United States Treasurer's check in the amount of $90.-82. Under the statute, 18 U.S.C. § 495, the maximum penalty for the crime is ten years incarceration and a $1,000.00 fine.

When he committed the offense, appellant was 20 years old, and he was 23 at the time of his conviction, not having been arrested for well over two years after the forgery. In the interim, he obtained a steady, well-paying job, and apparently led an honest life. Except for this lone act, his record was essentially spotless, his only prior brush with the law is said to be a non-moving traffic violation. After a pre-sentence investigation, the probation officer reported to the District Court that in his opinion the defendant was a suitable subject for probation.

Appellant contends here that the sentence should be vacated on the ground that the District Judge, in sentencing, abused his discretion by failing to consider the applicability of the Young Adult Offenders provision, 18 U. S.C. § 4209.[1] The effect of that section

---

1. § 4209. Young adult offenders.

In the case of a defendant who has attained his twenty-second birthday but has not attained his twenty-sixth birth-

day at the time of conviction, if, after taking into consideration the previous record of the defendant as to delinquency or criminal experience, his social back-

is to extend the special treatment which the Federal Youth Corrections Act [2] provides for offenders below the age of 22 to "Young Adult Offenders" between the ages of 22 and 26. Sentencing under section 4209 is within the District Judge's discretion, depending on whether in his opinion the defendant would benefit from treatment under the Youth Corrections program.

Appellant claims that the Judge either did not understand [3] that the Youth Corrections Act could be applied to persons who had passed their 22nd birthday, or, in the alternative, that he failed to remember to apply the Act in this instance. It is unthinkable that this able and experienced District Judge did not understand the provisions of section 4209 which was enacted more than a dozen years earlier and has been in constant use throughout the nation. Wilson admits that on January 6, 1971, the Judge did explicitly mention the Youth Corrections Act when he explained the possible penalties before accepting his guilty plea. *See* Pilkington v. United States, 315 F.2d 204 (4th Cir. 1963). Yet, appellant stresses that at no time did the Judge speak of the Young Adult Offenders provision, section 4209. But, since Wilson was 23 at the time of the conviction, the Judge, by referring to the Youth Corrections Act on January 6, clearly demonstrated his understanding of the availability of the Act in sentencing persons who have passed their 22nd birthday.[4]

In his alternative argument, appellant makes the point that some seven weeks

---

ground, capabilities, mental and physical health, and such other factors as may be considered pertinent, the court finds that there is reasonable grounds to believe that the defendant will benefit from the treatment provided under the Federal Youth Corrections Act (18 U.S.C. Chap. 402) sentence may be imposed pursuant to the provisions of such act.

2. The Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026, was enacted by Congress to give a sentencing judge an alternative to ordering the incarceration of a youthful offender in the general prison population. The Act establishes a Youth Corrections Division within the Board of Parole to administer the treatment of committed youths. The Division is empowered "to provide for the youthful offenders committed to it by the courts a system of analysis, treatment, and release that will cure rather than accentuate the anti-social tendencies that have led to the commission of crime." 1950 U.S.Code Cong.Serv. p. 3983.

Three special benefits to youthful offenders are made possible by commitment under the Act. First, it favors treatment in special facilities for the youthful offender such as training schools, hospitals, camps, and farms instead of prisons. Even when incarceration is ordered, youths are to be segregated from regular prisoners whenever possible.

Secondly, the Act holds out the possibility of release earlier than through the normal parole procedures. Usually, the sentencing judge imposes an indeterminate sentence of six years. The Division *may* release an offender conditionally at any time, and *must* release him conditionally after four years of treatment. After conditional release, the Division *may* discharge him unconditionally after one year, and *must* discharge him unconditionally by the expiration of the six year maximum. In cases where the crime carries a maximum sentence in excess of six years, if the judge desires to sentence under the Youth Corrections Act, and if he believes that a term of more than six years would be required to rehabilitate the youth, he may impose such a term within the limits of the criminal statute. The Division, under these circumstances, must conditionally release the youth no less than two years before the expiration of the term imposed, and must unconditionally discharge him by the end of his sentence.

Thirdly, and perhaps most importantly, is the unique provision that, if the youth has been unconditionally discharged before the expiration of the maximum sentence, his conviction shall automatically be set aside.

3. *Cf.* United States v. Williams, 407 F.2d 940 (4th Cir. 1969).

4. The Judge on January 6, 1971, said: Since you were born in 1948 [bringing the defendant past his 22nd birthday] * * * the Court has the power to sentence you under the Youth Corrections Act, which would carry a maximum sentence of six years.

later in imposing sentence, on February 26, 1971, the Judge adverted neither to the Youth Corrections Act nor section 4209. A reminder as to the availability of section 4209 was not brought to the Judge's attention by a request of counsel that defendant be sentenced under that section. If this case, as sometimes happens, was one of several set before the Judge for sentencing on that date, it is conceivable that some momentary confusion between cases may have occurred. In the absence of aggravating circumstances or any explanation by the Judge at sentencing, we are constrained to express our sense of perplexity and concern over the seeming severity of the three-year prison sentence for an offense involving less than $100.00. This is especially so in light of the good reputation the youthful appellant bears among his neighbors, co-workers, and employer, the absence of any previous criminal experience, and the probation officer's recommendation that he be granted probation. The disparity between the crime and the punishment is baffling. Certainly it appears that section 4209 could have been appropriately applied or a lighter sentence given.

■ It is normally not an appellate court's function to review sentences. While this circuit has recognized the merits of proposals for appellate review of sentences, see United States v. Pruitt, 341 F.2d 700, 703–705 (4th Cir. 1965); United States v. Martell, 335 F.2d 764, 767–768 (4th Cir. 1964),[5] we are committed to the view that our power in this regard is sharply curtailed. The statutory authority to review sentences, exercised on appeal from 1789 to 1891, is thought to have been removed by implication when appellate jurisdiction was transferred from the federal circuit courts to the newly created courts of appeals. Freeman v. United States, 243 F. 353, 357 (9th Cir. 1917), cert. denied, 249 U.S. 600, 39 S.Ct. 258, 63 L.Ed. 796 (1919). Contra, Smith v. United States, 273 F.2d 462, 468–469 (10th Cir. 1959) (Murrah, C. J., dissenting). Thus, until the Supreme Court or the Congress restores our power, we cannot modify sentences even when we deem them unwarranted.

■■ While a sentence fixed in the exercise of discretion within statutory limits is unassailable on appeal, the appellate court may scrutinize a sentence to ascertain whether there has indeed been an exercise of discretion. United States v. Daniels, 446 F.2d 967 (6th Cir. 1971); United States v. Williams, 407 F.2d 940 (4th Cir. 1969); United States v. Wiley, 267 F.2d 453 (7th Cir. 1959). If, as above suggested, the sentence here may have been the product of sheer inadvertence, then it would not be a deliberate exercise of judicial discretion. In the interests of justice, the District Judge should be afforded further opportunity to consider and reimpose sentence. To this end, the sentence is

Vacated and the case is remanded.

5. Since the decision of these cases there has been considerable further scholarly interest in this subject. See Tydings, Ensuring Rational Sentences—The Case for Appellate Review, 53 Judicature 54 (1969); Hruska, Appellate Review of Sentences, 8 Am.Crim.L.Q. 10 (1969); Mueller & Poole, Appellate Review of Legal but Excessive Sentences: A Comparative Study, 21 Vand.L.Rev. 411 (1968); Thomas, Appellate Review of Sentences and the Development of Sentencing Policy: The English Experience, 20 Ala.L.Rev. 193 (1968); Weigel, Appellate Revision of Sentences: To Make the Punishment Fit the Crime, 20 Stan. L.Rev. 405 (1968); Levin, Towards a More Enlightened Sentencing Procedure, 45 Neb.L.Rev. 499 (1966); Comment, Appellate Review of Sentences Imposed by the Trial Court, 48 J. of Urban Law 536 (1971); Brewster, Appellate Review of Sentences, 40 F.R.D. 79 (1965) (an article critical of the proposal).

Further interest has also been evident in the Congress. In 1965, Senator Hruska introduced S. 2722, 89th Cong.1st Sess., a bill providing for appellate review of sentences. Extensive hearings on that bill were held before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong.2nd Sess. (1966).

In 1968, the American Bar Association approved a report favoring appellate review of sentences and formulated standards.