**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard MACKAY and Chester Brewer,
Defendants-Appellants.**

Nos. 73-1328, 73-1329.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 16, 1973.

Decided Dec. 6, 1973.

Rehearing Denied Feb. 4, 1974.

Certiorari Denied April 29, 1974.
See 94 S.Ct. 1996.

618

Robert G. Mahony, Atty., Dept. of Justice (C. Nelson Day, U. S. Atty., D. Utah, on the brief), for plaintiff-appellee.

Philip I. Palmer, Jr. of Palmer, Palmer & Coffee, Dallas, Tex. (Jimi Mitsunaga of Mitsunaga & Ross, Salt Lake City, Utah, on the brief), for defendant-appellant Richard Mackay.

William F. Billings of Johnson, Guthrie & Billings, Dallas, Tex., for defendant-appellant Chester Brewer.

Before PICKETT, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The cause before us is a criminal prosecution in which the defendants Mackay and Brewer were charged with and convicted of violation of the mail fraud and securities fraud statutes. They were charged in nine counts with violation of 18 U.S.C. § 1341, using the mails to defraud, and in six counts of violating 15 U.S.C. § 78j(b) and 15 U.S.C. § 78ff. The jury convicted on all counts. The judge sentenced each of the defendants to one year on each of the 15 counts, or a total of 15 years to run consecutively, and fined each of them $27,000.

There are numerous allegations in Count I, the definitive count of the indictment, but the basic facts which are relied on by the government to establish the fraud are those pertaining to the obtaining of control of Federated Security Insurance Company and Transwestern Life Insurance Company and the stripping of Federated of its assets for the purpose of purchasing its stock. The defendants' corporation, Kaymac Industries, Inc., was used for the purpose of negotiating and acquiring the mentioned interests. The indictment charged the defendants with conceiving a scheme to defraud the policyholders, claimants, creditors and minority shareholders of Federated by borrowing $3,000,000 from Dorsey and Company, a New Orleans, Louisiana brokerage firm.

The basic facts surrounding the execution of the scheme are not disputed. Dorsey and Company advanced $3,000,000 for a very short period of time to permit the purchase of 519,400 shares (93 percent) of Federated stock to be transferred to Kaymac corporation. Soon after the stock was transferred the assets of Federated were assigned to Dorsey and Company. This occurred during the latter part of July 1969. The total purchase price was $3,000,000. This sum was paid in cash to one H. Smith Hagan, President of Oregon National Life Insurance Company, the parent company of Transnational Service Corporation which owned the controlling stock of Federated. As part of the transaction, Hagan received an additional $790,000 in mortgages owned by Federated for his sale to Kaymac of the block of Transwestern stock he held.

Dorsey and Company had insisted that the assets of Federated which Mackay had authorized Dorsey to sell had to be replaced, and so in July 1969 an arrangement was made with a New York company, United Housing Corporation of New York, to purchase 4.5 million dollars in government mortgages. In turn, these mortgages were reassigned to United as security for the sale and Brewer and Mackay executed promissory notes for

4.5 million dollars and at the same time obligated Federated to repurchase the notes in the event of default by Kaymac, the primary obligor, in the purchase of the mortgages.

On July 30, 1969, the purchase of the Federated stock was completed for $3,-000,000 in cash which was advanced temporarily by Dorsey and Company. Following this closing Dorsey sold the portfolio of Federated and recouped the $3,000,000 plus interest. Federated received back $531,000 of the excess from the sale of the bonds. Dorsey and Company received a very substantial commission. Most of the $531,000 just mentioned was used by defendants to purchase Transwestern stock for Kaymac.

The defendants maintain that as a result of all these financial maneuvers Federated had not suffered; that its assets had actually increased. They also point to the fact that the exchange of assets was approved by the Insurance Commissioner for the State of Utah. The difficulty is that Federated was legally responsible to pay for the mortgages purchased, and Federated's title was a naked legal title which was wholly lacking in equity and in substance.

Apart from this alleged scheme to defraud there are many further allegations in the indictment showing specific dispositions of cash of Federated to pay obligations of Kaymac and of the defendants personally.

The briefs contain numerous contentions. These contentions include 1) the question of sufficiency of the evidence to support the various allegations in the indictment; 2) the alleged denial of a speedy trial; 3) the alleged errors in giving and failing to give instructions; 4) it is also argued that the remarks of the trial judge during the trial constituted reversible error; and, finally, it is argued that the sentences were improper.

## I.

## SUFFICIENCY OF THE EVIDENCE

In considering whether the evidence is legally sufficient, it must be viewed in a light most favorable to the prosecution. The evidence is not to be weighed nor is it permissible for this court to consider the credibility of the witnesses. The essentials of mail fraud are proof of a scheme to defraud plus the use of the mails to execute or further this scheme or design. The offense of securities fraud is quite similar in that it also calls for proof of a scheme or design to defraud incident to the purchase or sale of a security. Here again, there must be the use of an instrumentality of interstate commerce or of the mails in furtherance of that scheme or design. The jurisdictional basis is, of course, the use of the mails or an instrumentality of commerce and as such each mailing is regarded as a separate crime even though it relates to essentially the same fraudulent scheme.[1] It is also fundamental that an accused need not carry out the mailing or use of an instrumentality of commerce. If he causes it to be carried out by setting forces in motion which foreseeably result in use of the mails, his action is sufficient. *See* Marvin v. United States, 279 F.2d 451 (10th Cir. 1960).

From a consideration of the evidence briefly sketched above, it is amply clear to us that Mackay, acting through Kaymac Industries, conceived a scheme to gain control of Federated by using its own assets for the purpose of purchasing its stock and for the purpose of purchasing for Kaymac stock in Transwestern. It is also clear that he used the assets of Federated to pay debts of Kaymac and to pay his own debts.

There is other fraudulent activity. It was represented to the broker who sold the Federated assets that these assets were being replaced when in fact the replacement was an insubstantial transac-

I. Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); Mitchell v. United States, 142 F.2d 480 (10th Cir.), cert. denied, 323 U.S. 747, 65 S.Ct. 49, 89 L.Ed. 598 (1944).

tion since Federated was required to somehow repay Kaymac for the purchase of the replacement assets of the mortgages.

The evidence also establishes that Brewer was a participant. He was present during the time period alleged in the indictment, either performing some steps himself or participating with Mackay. Although the evidence at trial was circumstantial, the inferences to be drawn from the basic facts strongly supported the existence of a design to obtain Federated assets for the purpose of making available cash to Mackay to the detriment and prejudice of the minority shareholders and the claimants and shareholders of Federated. The use of misrepresentation and the withholding of information to carry out the fraudulent purposes were adequate. The hope or even the belief that these manipulations would ultimately succeed is, of course, not a defense. Sparrow v. United States, 402 F.2d 826 (10th Cir. 1968). Furthermore, the evidence establishes the uses of the mails or instrumentalities of commerce incident to the carrying out of the scheme.[2]

## II.

### THE ALLEGED SPEEDY TRIAL DEPRIVATION

■ The indictment was returned on July 23, 1971, and the trial took place in December 1972. The defendants did not demand a trial. However, the defendant Mackay moved to dismiss the indictment just prior to the trial on De-cember 1, 1972. In that motion he alleged prejudice growing out of the delay between the time that the offense was alleged to have been committed and the time of trial. He stated that the period was two years. He also alleged prejudice due to delay in bringing the case to trial for a period of 18 months. He now maintains that some witnesses who would have purchased the Federated and Transwestern corporations had been lost. This fact does not appear anywhere in the record and therefore is not entitled to any consideration.

The cause was set for trial on two occasions and the second time neither the government nor the defendant was ready and both joined in the motion for a continuance.

■ The standards prescribed by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), are 1) the length of the delay; 2) reasons for the delay; 3) whether the defendant asserted his right; and 4) whether there was actual prejudice. These, of course, are not exclusive but are to be considered in relationship to any other evidence that might be relevant.

■ The length of time is not great in view of the fact that the cause is a complex mail fraud-securities fraud prosecution which calls for extensive and careful organization and preparation. The defendant, as noted above, did not assert his right until it came time to go to trial. In view of this, the inference to be drawn is that his main purpose was

2. Counts I through IV involved mailings of the control stock of Federated or the assets of Federated. Counts V and VI involved mailing of "lulling letters" by defendants to minority shareholders of Federated, informing them of a change in ownership and painting a rosy picture of the future of the company. Count VII involved an interoffice memo mailed by an outside consultant or assistant who was temporarily brought to Federated to "square away" the take-over which defendants were still in the process of completing. Counts VIII and IX alleged mailings of the control stock certificates of Federated from Kaymac in Dallas to Federated's headquarters for final transfer of the stock shares into Mackay's name.

Counts X, XI and XV were based on use of aircraft flights in furtherance of the scheme. X and XI involved flights to Salt Lake City by participants in the contemplated transaction which would consummate the sale of the Federated and Transwestern stock to Mackay and/or Kaymac. Count XV involved a flight transferring the purported mortgage assignments to Federated from Dallas to Salt Lake. Counts XII and XIII involved mailings of Federated's assets to brokers for resale, and count XIV involved a telegraphic transmission of $90,000 of Federated money to United Housing to facilitate the mortgage assignment facet of the overall scheme.

to make a record. In short, there are manifest reasons for the delay in terms of the difficulty of the task involved.

Finally, we see no prejudice to the defendants. Accordingly, it is not a case in which there has been a violation of the Fifth or Sixth Amendments. *Cf.* United States v. Wilson, No. 73–1247 (10th Cir., October 4, 1973). *See also* Basker v. Crouse, 426 F.2d 531 (10th Cir. 1970); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), and *see* the concurring opinion of Mr. Justice Brennan in this latter case.

### III.

### THE FAILURE TO INSTRUCT ON VIEWING THE TESTIMONY OF AN ACCOMPLICE WITH CAUTION

■ ■ Defendants' objection to the failure of the court to instruct on accessory testimony was very general in form. In fact, no specific mention was made of failure to instruct on this subject. Ordinarily this would rule out consideration of the contention (in accordance with Rule 30). In this instance, however, there was little opportunity to object. The judge at the completion of the charge asked counsel to stipulate that the exceptions could be taken after the jury retired and to further stipulate that those exceptions were deemed to be taken in "conformity to the rule." In view of this questionable action on the part of the trial court, it would be unfair to hold defendants to a strict observance of Rule 30. Hence if the failure to give the instruction were to be regarded as prejudicial, the procedural deficiency should not and would not enter into this court's decision. Furthermore, the fact that the instruction was an inadequate one which did not fully state the law (and it was) should not furnish a justification for the trial court's failure to charge on this subject. Nevertheless, we are of the opinion that the failure to instruct was not reversible error. True, the witnesses in question, Dorsey and Hagan, were not directly involved in the formulation and engineering of the scheme to defraud. They did, however, have a participation whereby it was arguable that

they were accomplices. *Cf.* Beatty v. United States, 357 F.2d 19 (10th Cir. 1966) and Hull v. United States, 324 F. 2d 817 (5th Cir. 1963).

The main reason for our conclusion that the failure to give the instruction does not call for reversal is that the testimony furnished by the witnesses in question made little contribution to the case because the central scheme, that of purchasing the stock of Federated with Federated's funds, was the heart of the scheme and an adequate basis for the charge and the conviction, and this was established with documents and other evidence. So, therefore, the case was not dependent on the so-called accomplice testimony. *See* United States v. Owens, 460 F.2d 268 (10th Cir. 1972); United States v. Birmingham, 447 F.2d 1313 (10th Cir. 1971); and *compare* United States v. Plemons, 455 F.2d 243 (10th Cir. 1972). There we upheld the conviction, notwithstanding that there was no accomplice instruction and we did so because of strong corroborative evidence (there also, however, the defendant had not requested the instruction.)

One further factor is that the defendants do not dispute the basic facts in the case. There is no question about Mackay having promoted and carried out the transaction with the help of Brewer.

From a study of the entire record it clearly appears that the conviction is based upon the whole scheme and not any incidental misrepresentations made to Dorsey or Hagan, which testimony strikes us as being superfluous.

Considering, then, the magnitude of the fraudulent scheme, we find it impossible to conclude that the trial court's failure to compose and give an instruction on accomplice testimony justifies a reversal of the convictions.

### IV.

### THE ALLEGED PREJUDICE STEMMING FROM REMARKS OF THE TRIAL COURT

Although an extensive appendix of remarks of the trial court during the trial appears in the brief, only one of these was objected to. Thus, as to the

others, it would have to appear that the particular remark or the remarks considered together constitute plain error. Rule 52(b). United States v. Wheeler, 444 F.2d 385 (10th Cir. 1971); Warden v. United States, 391 F.2d 747 (10th Cir. 1968).[3]

The comment of the court which is shown above was directed not only to the examination of counsel for the defendant, but also to the examination of government counsel. While this comment did not serve any purpose and was undoubtedly intended to be humorous, we fail to see it as being prejudicial to the rights of the accused. If, of course, the judge had evidenced hostility or bias the question would assume different proportions. *See* Lowther v. United States, 455 F.2d 657 (10th Cir. 1972); *cf.* United States v. Wheeler, *supra*. We fail to see plain error in the trial court's admonition to the defendant Mackay to "answer that question without beating around the bush." This is within the court's province. Deschenes v. United States, 224 F.2d 688 (10th Cir. 1955).

Indeed, the trial court may even reprimand or rebuff counsel when necessary to maintain control of the proceedings. Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970); United States v. Gleeson, 411 F.2d 1091 (10th Cir. 1969).

Finally, the judge's comments on the evidence were not plain error when read in proper context, since the charge as a whole defines the jury's role as the finder of facts.

## V.

### OTHER OBJECTIONS TO INSTRUCTIONS

In addition to the accessory instruction the defendants raise a number of other objections to instructions.

First, they complain that the trial judge in explaining the nature of the grand jury indictment suggested that the defendants had already been convicted by the grand jury. We disagree with this interpretation. The court explained that the indictment was merely a charge or accusation, was not evidence and was not to be considered as evidence in the case.

Second, it is contended that the judge's comment in the charge as to reassignment of the mortgages originally assigned to Federated invaded the province of the jury. The important factor here is that the documents in the record support the judge's comment as to reassignment. The defendants do not deny the effect of these documents but say that the reassignments were merely formal. No prejudice is shown.

We have also considered the numerous other objections including defendant Brewer's exception to the trial court's description of the indictment charging "failing to disclose to the broker in New Orleans, Transnational Service Corporation and Oregon National Insurance Company, as well as the District Court of the Third Judicial District, Salt Lake City, Utah, that there were no free, clear and unencumbered mortgages assigned to Federated." The mention of the district court as one of the victims is, it is true, unsupported by evidence; the reference, however, was a passing one which does not appear to us to be harmful.

Defendants have also taken exception to that part of the instruction stating that the jury could infer intent from circumstantial evidence. This type of instruction, or instructions similar to it, have been criticized as improperly shifting the burden of proving intent from the government to the defend-

---

3. The particular remark as it appears in context reads as follows:

BY MR. PALMER:

Q. Mr. Kelly, I have forgotten what I was asking you when we broke for lunch, so I am going to forget that this—

THE COURT: *I want to forget the whole examination.*

MR. PALMER: Beg pardon?

Your Honor, *I would like for the record at this time to move for a mistrial upon the grounds that the judge's comments on the weight of the evidence is prejudicial to my client.*

ant. Our court has been critical of the instruction, but has not held it to be prejudicial when the charge as a whole sufficiently emphasizes that the burden of proof is on the prosecution, and that the jury must actually conclude that defendant had the requisite intent, even though established by circumstantial evidence. United States v. Parker, 469 F.2d 884, 895 (10th Cir. 1972); McCarty v. United States, 409 F.2d 793, 800 (10th Cir.)', cert. denied, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969). *See also* United States v. Woodring, 464 F.2d 1248, 1251 (10th Cir. 1972); United States v. Tijerina, 407 F.2d 349, 355 (10th Cir. 1969). Since the judge gave clear instructions on presumption of innocence, burden of proof, use of circumstantial evidence, exculpatory nature of good faith, meaning of "knowingly" and "wilfully," and what constitutes the requisite intent in fraud cases, it cannot be said that the embattled portion was prejudicial to defendants.

■ ■ We at last consider Brewer's objection to the instruction covering statements made recklessly being tantamount to fraudulent ones. This lengthy instruction discusses statements made without regard to whether they are true or false; statements put forth without a reasonable basis; statements of fact implying knowledge where there is no knowledge; expressions of opinion where the speaker has no opinion in fact; and promises made recklessly without reasonable basis for belief that they can be fulfilled. Insertion of the word careless does not, in our view, render the instruction erroneous because its whole thrust

is conduct and activity which are tantamount to fraud. Defendant says that the law requires that a statement made recklessly must also be patently false. We disagree. The law is that a statement made which is either patently false or made with reckless indifference to its truth or falsity can be equivalent to intent to defraud. Elbel v. United States, 364 F.2d 127, 134 (10th Cir. 1966); Gusow v. United States, 347 F.2d 755, 756 (10th Cir. 1965).

## VI.

### THE ALLEGED EXCESSIVENESS OF THE SENTENCE

Defendants finally contend that the sentence is so patently excessive as to require relief.

At the time of sentence the judge noted the prevalence of fraud cases within the Utah district and cited this as a reason for imposing 15 consecutive one-year sentences plus substantial fines. The defendants maintain that there was essentially one offense and a number of mailings or uses of the instrumentalities of interstate commerce and that the cause should be treated as a single offense.

In an early decision in this Circuit, Mitchell v. United States, 142 F.2d 480 (10th Cir. 1944), this identical question was before our court. A mail fraud indictment had eight counts which charged a continuing scheme to defraud. The court held that this did not constitute one continuing crime but that each and every mailing was a distinct execution of the central scheme.[4] So also in our

---

4. The discussion in *Mitchell* is as follows:

It is of course true that an offense of a continuing duration cannot be arbitrarily divided into separate and distinct offenses by the disposition of the prosecutor and the grand jury to divide it into separate elements of time . . . But we have quite a different situation. The crimes charged in each count constitute one continuous scheme to defraud; the same scheme is alleged in each count of the indictment, and the offense charged in each count has its genesis in the continuing scheme to defraud. But the gist and crux of the offense is the use of the mails in the execution of the scheme; it is the use of the mails for the purpose of executing the scheme which gives the federal courts jurisdiction over the offense . . . The plain distinction lies in the difference between one continuing offense which may be consummated by a single or plural acts over a period of time . . . and an indictment which alleges a continuing scheme and artifice to defraud, which is made criminal under the law each and every time the mail is used in execution thereof, and only when and if the mails are used.

142 F.2d at 481.

cause each separate use of the mails is a separate offense. Similarly, the repeated violation of the Securities Act is subject to the same doctrine. *See* Palmer v. United States, 229 F.2d 861 (10th Cir. 1955), cert. denied, 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861 (1956). The constitutionality of the multiple count approach in mail fraud cases has been upheld by the Supreme Court. Badders v. United States, *supra.*

We have repeatedly held that so long as the sentence is valid, that is, does not exceed maximum limits, it is not illegally excessive. Smith v. United States, 273 F.2d 462 (10th Cir. 1959); Edwards v. United States, 206 F.2d 855 (10th Cir. 1953).

Federal appellate courts do not have the authority to review sentences, although there have been instances in which this power has been undertaken. *See, for example*, United States v. Wilson, 450 F.2d 495 (4th Cir. 1971); Marano v. United States, 374 F.2d 583 (1st Cir. 1967); United States v. West Coast News Co., 357 F.2d 855 (6th Cir. 1966); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960).

There is an avenue open to the defendant and that is to move pursuant to Rule 35 of the Federal Rules of Criminal Procedure for a reconsideration of the sentence. The trial court may take a different view at this later stage in the proceedings. We, however, lack legal authority to interfere with the sentences imposed and we are not disposed to employ fiction to achieve a result.

We deem it unnecessary to discuss the many other points raised in the briefs. All matters having a semblance of merit have been examined and listed.

The judgment of the district court is affirmed.

### COMMENTS ON THE MOTIONS FOR REHEARING

The motions for rehearing of both defendants advance several contentions. We consider several but not all of these contentions. The defendant Brewer objects to several statements in the opin-

ion such as the reference to "defendants' corporation." Brewer was secretary-treasurer of Kaymac and he had signed on its behalf. *See, for example*, the Government's Exhibit 25–C, dated August 27, 1969, an assignment on behalf of Kaymac Industries.

Brewer claims that he did not execute promissory notes to United Housing. He did, however, on August 12, 1969, execute an assignment to Peoples Bond and Mortgage Company incorporating a letter from Kaymac to United Housing. That letter stated that "Kaymac Industries, Inc. shall cause Federated Security Insurance Company to execute and *deliver reassignments* of the mortgages assigned under the letter agreement executed this date and referred to herein." Although Brewer may not have actually executed the promissory notes reassigning the mortgages to United Housing, he was active and directly a participant in fact in the reassignment.

Both Mackay and Brewer object to the charge involving 15 counts in a transaction which is essentially one big continuing transaction. We have been referred to United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), wherein it was held that the mailings were remote from the transactions described in the indictment. The *Maze* decision does not rule this case.

We have considered all the other contentions pertaining to liability and feel that they are lacking in substance. If we were able to pursue form and ignore substance, they might have some persuasive force. This, of course, we cannot do, and from a consideration of the record we are unable to agree that Brewer was in effect an uninformed bookkeeper.

The defendants argue that the consecutive sentences on 15 counts are excessive in view of the fact that the essential fraud, although large in scope, was, in the final analysis, one transaction. As noted in our opinion, we are unauthorized to change or reduce the sentences. We do, however, deem the 15 consecutive sentences as to each of the defendants to be unconscionably exces-

sive, so much so that we consider it necessary to partially remand the case for the purpose of giving the court an opportunity to reconsider the sentences. Neither defendant had any prior convictions, and in other respects their records appear to be free of any involvement. The cause, with the exception of the matter remanded, will be retained in this court pending further proceedings.[5]

Both motions for rehearing on liability are denied. The Clerk is directed to recall the mandate pending further proceedings in the trial court.

---

5. On infrequent occasions there have been decisions which, although affirming convictions, have nevertheless remanded the case to the trial court with directions to reconsider or impose a less severe sentence. *See, for example,* United States v. Wilson, 450 F.2d 495 (4th Cir. 1971) (trial court's failure to sentence under Youth Corrections Act may have been due to inadvertence); Marano v. United States, 374 F.2d 583 (1st Cir. 1967) (district court gave substantial consideration to legally impermissible factors); United States v. West Coast News Co., 357 F.2d 855 (6th Cir. 1966) (sentence of 25 years' imprisonment plus $25,000 fine for violation of federal obscenity statutes); United States v. Wiley, 278 F.2d 500 (7th Cir. 1960) (The record shows that the trial judge imposed a heavier sentence on defendant who stood trial than on the codefendant who pleaded guilty).