**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard T. CARDALL and Golden Rule Associates, Defendants-Appellants.**

**Nos. 75–1768, 75–1780.**

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 22, 1976.

Decided Dec. 29, 1976.

Rehearing Denied in No. 75–1768
April 8, 1977.

Richard W. Beckler, Crim. Div., Dept. of Justice, Washington, D. C. (Ramon M. Child, U. S. Atty., Ronnie L. Edelman, and Hugh P. Mabe, III, Crim. Div., Dept. of Justice, Washington, D. C., Rodney G. Snow, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Dean R. Mitchell, Salt Lake City, Utah (Mitchell & Dahl, Salt Lake City, Utah, on the brief), for defendants-appellants.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Richard T. Cardall and Golden Rule Associates, a corporation controlled by Cardall, along with one Frank L. Parks, were convicted by a jury in a joint trial of conspiring together, and with others, to use the mails and interstate commerce to sell unregistered securities and to defraud the purchasers of those securities, in violation of 18 U.S.C. § 371. All three were also convicted on

seven substantive counts of mail fraud in the sale of securities, in violation of 15 U.S.C. §§ 77q(a), and on one substantive count of the sale of unregistered securities, in violation of 15 U.S.C. § 77e(a)(2). Cardall and Parks were sentenced to two years imprisonment on each of the nine counts, such sentences to be served consecutively, and not concurrently. Each was also fined $50,000, as was Golden Rule Associates. In the present appeals Cardall and Golden Rule seek reversal of their respective convictions. Parks has by separate appeal sought review of his conviction, but such is not a part of the present proceeding.

■ In our view the principal matter urged in these two appeals is the alleged misconduct by the trial judge, which misconduct, it is said, evidenced continuing hostility towards defense counsel which, in turn, operated to the prejudice of both Cardall and Golden Rule. Such a charge should not be lightly made and, once made, should not be casually treated by a reviewing court. Indeed, a *fair* trial is the keystone of our entire judicial system.

■ Our study of the record indicates to us that although the trial judge's handling of the case is certainly not a model of judicial conduct, such is nevertheless insufficient to dictate a reversal. Attached to this opinion as an Appendix are excerpts from the trial transcript, which set forth most of the statements made by the trial judge in the presence of the jury that counsel relies on as showing hostility towards both counsel and his clients. As indicated, in our view the comments by the trial court are not grounds for reversal, though no doubt such caused considerable discomfort to counsel. This was a four-day trial with the Government calling some twenty-five witnesses and the defendants calling seven. Viewed in this context, the comments from the trial judge were but minor incidents in the total trial.

In both *United States v. Mackay,* 491 F.2d 616 (10th Cir. 1973), *cert. denied,* 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1973) and *Whitlock v. United States,* 429 F.2d 942 (10th Cir. 1970), it was urged on appeal that the trial judge, who is the same judge who tried the instant case, had so abused counsel that their clients had failed to receive a fair trial. In both *Mackay* and *Whitlock* we concluded that the comments from the trial judge had not interfered with the fairness of the trial. In our best judgment the instant case comes well within the rule of *Mackay* and *Whitlock.* In sum, then, the comments of the trial judge were indeed unjudicial, but were not such as would prejudice the jury against either Cardall or Golden Rule. It is inconceivable that a jury would convict the defendants of nine felony counts simply because of the trial judge's unjudicial remarks to counsel. A jury is made of sterner stuff. See also in this general connection, *Cooper v. United States,* 403 F.2d 71 (10th Cir. 1968).

A word of explanation concerning excerpt No. 1 is perhaps in order. The trial court was initially laboring under a misapprehension that the three defendants, i. e., Cardall, Golden Rule, and Parks, were collectively entitled to only six peremptory challenges, the same number as granted the Government. However, when the trial court was advised that under Fed.R.Crim.P. 24(b) the defendants were entitled to ten challenges, the trial court changed its ruling and allowed the defendants a total of ten peremptory challenges, only six of which were used.

■ An employee of the Securities and Exchange Commission was called as a Government witness. On direct examination this witness was asked whether during the course of his investigation he had ascertained the role played by Golden Rule. In response to that question he volunteered that "Mr. Cardall took the Fifth." Motion was made for mistrial on the grounds that the fact that Cardall had remained silent could not be used against him, or Golden Rule. *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir. 1973), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973). The trial judge indicated that he was uncertain whether the volunteered statement of the witness had in fact even been heard by the jury. In any event, the trial judge none-

theless instructed the jury to disregard the utterance, but refused to grant a mistrial. We find no error in refusing to declare a mistrial. Even assuming the jury heard the witness' response, instructing the jury to disregard the same was under the circumstances sufficient. A mistrial is not the only remedy for an error of this sort. *United States v. Mandell,* 525 F.2d 671 (7th Cir. 1975) and *United States v. Smith,* 515 F.2d 1028 (5th Cir. 1975).

Prior to closing argument, both the Government and defense counsel had requested the trial court to give certain instructions. At the close of the testimony, and before closing argument, the trial court failed to rule on these several requests, and, without objection, closing argument ensued. Later defense counsel brought to the attention of the trial judge that he had failed to rule on these requested instructions *prior* to oral argument, as required by Fed.R. Crim.P. 30. This failure to comply with Rule 30 is now assigned as error.

■■■ We have heretofore held that the failure to rule on requested instructions prior to oral argument is not an "absolute," and that prejudice must be shown as to a specific matter, point, or issue before such omission by a trial court will constitute reversible error. *See United States v. Pommerening,* 500 F.2d 92 (10th Cir. 1974), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1974) and *Whitlock v. United States,* 429 F.2d 942 (10th Cir. 1970). In the instant case defense counsel made no objection until *after* closing argument, and on appeal there is no indication as to precisely how there was resulting prejudice stemming from this inadvertent omission by the trial court. The claim of prejudice is made in most general terms. In such circumstance the failure to comply with Rule 30 does not constitute grounds for reversal.

■■■ Counsel asserts here he was denied his right to allocution at time of sentencing as provided for by Fed.R.Crim.P. 32(a). Contrary to the assertions of counsel, the record reveals that when Cardall and Golden Rule were first sentenced both Cardall and counsel advised the court that they had

nothing to say. When Cardall and Golden Rule were brought before the court for resentencing, about which more will be said later, neither Cardall nor counsel gave any indication that they desired to make any statement. In fact the contrary was indicated. We find no violation of Rule 32(a).

■■■ Complaint is also made here that the sentences imposed on Cardall and Golden Rule were cruel and excessive, and should be either modified or set aside. Such is also used in support of the defendants' basic contention that the trial judge was prejudiced against them. Initially, the trial judge sentenced Cardall to five years imprisonment on each of the nine counts, such terms to be served consecutively, and assessed a total fine of $50,000. A fine of $50,000 was also assessed against Golden Rule. Later Cardall was returned to court and was resentenced to two years imprisonment on each of the nine counts, such terms again to be served consecutively. The fines as previously imposed remained unchanged. The sentences imposed, both as concerns imprisonment and fines, were within the limits of the applicable statutes. Such being the case, the rule in this Circuit is that we, as a reviewing court, are without power to modify the sentence. *United States v. Sierra,* 452 F.2d 291 (10th Cir. 1971). However, as noted in *Sierra,* a trial court under Fed.R.Crim.P. 35 may consider a reduction in sentence within 120 days after receipt of a mandate issued upon affirmance of a judgment on appeal.

In *United States v. Mackay,* 491 F.2d 616 (10th Cir. 1973), a case which bears resemblance to the instant one, the trial judge, who was the trial judge in the instant case, imposed fifteen consecutive one-year sentences, plus substantial fines in a mail fraud case. In *Mackay* we held that we lacked legal authority to interfere with the sentences thus imposed, but made mention of Rule 35 as an "avenue open to the defendant." Thereafter the trial court reconsidered the matter of sentences, and adhered to its earlier pronouncement. *See United States v. Mackay,* 374 F.Supp. 502 (D.C. Utah, 1973). In declining to modify the

earlier sentences imposed, the trial court set forth its reasons. Much of what the trial court commented upon in *Mackay,* on remand, would appear to apply here. In the instant case the trial court was of the view that Cardall had "stashed away" money received from his fraudulent operations. And Cardall's operations were definitely not of the penny-ante variety. Indeed, the losses sustained by those who were bilked by Cardall were in the hundreds of thousands of dollars, if indeed not in the millions. And it is significant to note that in the instant appeal there is no suggestion that the evidence is insufficient to support the verdict.

Judgment affirmed.

## APPENDIX

*No. 1:*

THE COURT: I think six ought to be enough.

MR. MITCHELL: I exercised five challenges.

THE COURT: You have one more.

MR. MITCHELL: I believe, jointly we have ten. That is why I exercised five.

THE COURT: I am not going to allow you jointly ten. All I allow in a case is one bunch of challenges and you have to get together and make those challenges.

Do you know, and of course you do, that these jurors' names are drawn from the voter registration lists all over the state? And they are screened. And they are interrogated. They fill out questionnaires and are sifted out. Already they have been challenged and excused. And there is no damn sense of taking half of a jury out of that box for no reason at all.

Now, I examined them very carefully. I put them on their oath. And I am not going to allow you both five challenges. That is all there is about it.

\*　\*　\*　\*　\*　\*

*No. 2:*

THE COURT: Overruled. I want to say something to you people. You have heard me tell this jury in the most solemn tones I know how to use that it is their duty to decide this case on the evidence. And the evidence will consist of the sworn testimony of witnesses and some exhibits that the Court will receive into the record, and that is all. That is the evidence on which you must decide this case and lay aside every other consideration. Now, I am not going to have you fellows jumping up in loud tones and saying things that are going to disturb this jury in its deliberations. Now, we don't need any of that. You make your objections, and the Court will rule on them. That is the way it will be. Now, you made one just before lunch, Mr. Mitchell, in a very loud voice. It was a voice that aggravated me, let alone the jury.

MR. MITCHELL: Your Honor, I apologize if I made it in such a loud voice.

THE COURT: All right. That takes up time too. What I want you to do, and I said this in the beginning of the trial and I don't want to say it again, I don't allow counsel to make any appeals to that jury that are intended or calculated or likely to inflame them in any way. And if there is any of that sort of business at any time in the course of this trial, somebody is going to hear from me about that. And I intend to impose severe sanctions for it.

Now, there is only one way to run a lawsuit and that is to run it. And I don't intent to fool around here with any nonsense.

Now, if you want to join in an objection, join in it. But don't make a speech about it. We don't need that.

All right. I hope I don't have to say that again.

The exhibit is received. The objection is overruled.

\*　\*　\*　\*　\*　\*

*No. 3:*

MR. MITCHELL: Your Honor, I respectfully submit there is no evidence before this court, absolutely no evidence before this court that the individual that signed

this document was ever president of this corporation.

THE COURT: All right. There you go again. Your objection is overruled.

This came from the record of the company?

MR. BECKLER: That is correct, your Honor.

THE COURT: Yes, all right. I am not going to permit these specious objections. That comes from the records of the defendant company, ICDC.

\* \* \* \* \* \*

*No. 4:*

MR. BECKLER: Objection, your Honor.

THE COURT: Sustained.

MR. MITCHELL: Your Honor, may we approach the bench?

THE COURT: It is immaterial.

MR. MITCHELL: May we approach the bench, your Honor?

THE COURT: Yes, you can approach the bench. And then you can walk away from it.

\* \* \* \* \* \*

*No. 5:*

THE COURT: You see what happens when you climb into the witness chair with the witness? He lowers his voice, and you get into a little confidential talk. And I can't hear you.

\* \* \* \* \* \*

*No. 6:*

THE COURT: Yes, he will remain. I don't want anybody to talk to this witness who was just on the stand. I don't want you fellows to talk to him or work him over. That was addressed to Mr. Cardall. It was addressed to Mr. Parks and his attorney and anybody else around. I don't want anybody to talk to that man until we are through with him.

\* \* \* \* \* \*

*No. 7:*

THE COURT: Mitchell, I told you not to make a demonstration like that. I will see you after the trial.

MR. MITCHELL: Your Honor, I apologize. I didn't think I was making a demonstration.

THE COURT: I will call you to account later.

Q. (By Mr. Mitchell) Now isn't it true, Mrs. Shapiro—

THE COURT: Don't do it again. This will be the third time.

MR. MITCHELL: I am not making a demonstration, your Honor.

THE COURT: I won't let you repeat it three times.

MR. MITCHELL: Well, I didn't get an answer to it, your Honor.

Q. (By Mr. Mitchell) What is your answer to the question?

A. I don't know. He made me nervous. I don't know what he wants.

THE COURT: Miss Reporter, was that question answered?

THE REPORTER: I am not sure, your Honor. I will check.

THE COURT: This kind of demonstration upsets the Court Reporter and the Court and everyone else.

\* \* \* \* \* \*

*No. 8:*

THE COURT: And then you began to push it?

THE WITNESS: No, I didn't push it. We sent out the attorney to look it over.

THE COURT: And after the attorney looked it over—

THE WITNESS: And then we—

THE COURT: Then you started to push it?

THE WITNESS: Not push it, trade it.

\* \* \* \* \* \*

*No. 9:*

Q. Now are you telling this jury that Mr. Cardall just gave that to you and got nothing in return?

A. Well, would you like me—Yes, I am saying that.

Q. He got nothing in return; is that your testimony?

A. I would prefer that you ask me how we obtained the stock.

THE COURT: Now, Mr. Smith, this is the United States District Court, the high court of record.

THE WITNESS: Which I recognize.

THE COURT: And you are under oath.

THE WITNESS: Which I also recognize.

THE COURT: And that carries a penalty of perjury. Now, I want you to answer counsel's questions bearing in mind those facts.