8 F.3d 29
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
RANA RESEARCH, INC. (d/b/a Vista Group, Ltd.), Defendant-Appellant.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
RANA RESEARCH, INC. (d/b/a Vista Group, Ltd.), Defendant;
Vipin Sahgal, Defendant-Appellant;
Robert H. Bretz, Appellant.
 Nos. 91-56230, 91-55044.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided Nov. 3, 1993.
 
 Before: D.W. NELSON, HALL and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Rana Research, Inc., doing business as The Vista Group, Ltd. (Rana/Vista), and its president and sole shareholder, Vipin Sahgal, (Defendants) appeal judgments permanently enjoining them from violating section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants are joined by their counsel, Robert H. Bretz, (Appellants) in appealing the district court's imposition of monetary sanctions.
 
 
 3
 * We first consider whether the district court erred in refusing to disqualify Judge Hauk on the ground of bias. A judge must be disqualified if a reasonable person with knowledge of all the facts might reasonably question the judge's impartiality. United States v. Payne, 944 F.2d 1458, 1476 (9th Cir.1991) (citations omitted), cert. denied, 112 S.Ct. 1598 (1992); In re Beverly Hills Bancorp, 752 F.2d 1334, 1341 (9th Cir.1984). Judge Hauk made a single inquiry as to Sahgal's ethnicity. Although the question was inappropriate, neither it nor the record reflects unequal treatment of Sahgal. Judge Hauk meted out his impatience equally to each party. His remark regarding Sahgal's ability to read his declaration undoubtedly related to Defendants' representation that Sahgal had difficulty with the English language.
 
 
 4
 Defendants also claim that Judge Hauk had predecided the case. Judge Hauk's remarks do not demonstrate that his mind was "irrevocably closed" to the evidence. See Payne, 944 F.2d at 1476 (quoting Southern Pac. Communications Co. v. AT & T, 740 F.2d 980, 991 (D.C.Cir.1984), cert. denied, 470 U.S. 1005 (1985)). Rather, his remarks evince his concern that counsel was continuing the litigation to promote his own interests rather than those of his clients.
 
 
 5
 We find no abuse of discretion in the district court's refusal to disqualify Judge Hauk.
 
 II
 
 6
 Appellants contend that the district court erred in imposing monetary sanctions.
 
 
 7
 The district court imposed sanctions on Appellants for filing a motion for summary judgment. The district court considered the motion "not well-grounded and not warranted by existing law." See Fed.R.Civ.P. 11 (mandating sanctions for motions not well grounded in fact or law). The motion for summary judgment was grounded in the same facts alleged in the SEC's complaint and therefore was well-grounded in fact. As for its legal basis, the accompanying opinion illustrates that a decision on the motion was not a foregone conclusion. The district court abused its discretion in imposing this sanction.
 
 
 8
 Another sanction was imposed on Appellants for refusing to cooperate in discovery. A discovery sanction, imposed under Rule 37, must be "just," that is the trial court must consider the relevant factors and the conduct at issue must warrant the severity of the sanction, and the sanction must specifically relate to the particular claim at issue in the discovery order underlying the motion for sanctions. Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988). Destroying evidence is serious misconduct easily warranting sanctions. The trial court failed to consider, however, whether Defendants were responsible for destroying the documents, and if they were not, whether they should nonetheless be held accountable for failing to secure all the records when they had the opportunity. Accordingly, the discovery sanction is vacated. On remand, the district court should consider whether Appellants may fairly be held responsible for the destruction of the records under all of the circumstances.
 
 
 9
 Following trial, the district court imposed a third sanction based on its conclusion that the entire defense was frivolous. Factual issues of scienter and the need for injunctive relief existed, and the legal question of whether reliance is an element of a 10b-5 action brought by the SEC was subject to contest in good faith. We conclude that the district court abused its discretion and accordingly, we reverse the trial sanction.
 
 III
 
 10
 Defendants next argue that the trial court disqualified Bretz without good cause.[1] The trial court has primary responsibility for controlling the conduct of lawyers practicing before it. We therefore hesitate to disturb an order disqualifying counsel absent an abuse of discretion. In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litigation, 658 F.2d 1355, 1358 (9th Cir.1981), cert. denied, 455 U.S. 990 (1982).
 
 
 11
 Attorneys practicing before the United States District Court for the Central District of California must "comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto." C.D.Cal.R. 2.5.1. The ABA Model Rules of Professional Conduct are not binding on members of the California bar but are a collaterol source that may be consulted for guidance, particularly when California's State Bar Act and Rules of Professional Conduct are imprecise or incomplete. State Bar of Cal. Formal Opn. No. 1983-71; Paul E. Iacono Structural Engineer, Inc. v. Humphrey, 722 F.2d 435, 439 (9th Cir.) (citing California courts' reliance on the Model Code, the ethical standard sanctioned by the ABA prior to its adoption of the Model Rules), cert. denied, 464 U.S. 851 (1983).
 
 
 12
 The district court did not disqualify Bretz solely because his testimony was required at trial. Bretz's disqualification was additionally due to his involvement in the events underlying this action. Bretz provided legal counsel to Defendants prior to their second press release. Defendants asserted reliance on this advice as a defense. Moreover, Bretz's involvement rose to such a level that at one time the trial court and the SEC perceived Bretz as a potential defendant either in this action or in a future proceeding.
 
 
 13
 Neither the California Rules of Professional Conduct nor the State Bar Act provide precise guidance for evaluating this type of conflict. See People v. Bailey, 12 Cal.Rptr.2d 339, 340 (Cal.Ct.App.1992) (court turned to Model Rules when considering propriety of appointing trial counsel to represent defendant on appeal because such appointments place counsel in untenable position of urging own incompetence). The California Rules generally provide that an attorney may continue representation despite a conflict if the attorney gives written disclosure or obtains the client's informed written consent. Cal.R. of Prof. Conduct 3-300, -310, -320. However, "[t]here are some matters in which the conflicts are such that written consent may not suffice for non-disciplinary purposes." Cal.R.Prof. Conduct 3-310 discussion; see, e.g., Klemm v. Superior Court, 142 Cal.Rptr. 509, 512 (Cal.Ct.App.1977) (purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed).
 
 
 14
 We find Model Rule 1.7(b) instructive in this regard. Under Model Rule 1.7(b), even if the client gives his informed consent, the lawyer must be disqualified if it is unreasonable for him to believe that his own interests will not adversely affect his representation of the client. Model Rules of Professional Conduct 1.7(b); Bailey, 12 Cal.Rptr.2d at 340 (relying on Model Rule 1.7(b)).
 
 
 15
 Under the facts of this case, we find that the trial court did not abuse its discretion in disqualifying Defendants' counsel.[2]
 
 IV
 
 16
 Defendants maintain that the district court erred in granting default judgment and in enjoining Rana/Vista because the SEC had not shown that unless enjoined, Rana/Vista would violate Rule 10b-5 in the future.
 
 Default Judgment
 
 17
 The notice provisions of Rule 55(b)(2) of the Federal Rules of Civil Procedure do not apply when the trial court grants default as a sanction for failure to appear at trial rather than for failure to defend the action. Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141 (9th Cir.1989) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 64 (2d Cir.1986)). In this instance, the district court clearly intended the default as a sanction and erroneously credited the default to failure to defend under Rule 55.
 
 
 18
 When determining whether to enter default as a sanction, the trial court should balance (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir.1990), cert. denied, 498 U.S. 1109 (1991); see Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1385 (9th Cir.1988). Defendants received more than five months notice that the court might disqualify their counsel. The district court employed alternative sanctions during the proceeding and warned Defendants' counsel that Rana/Vista could not appear pro se.[3] On balance, factors one, two and five weigh in favor of sanctions, factor four weighs against it and factor three is neutral. We conclude that the default sanction was not an abuse of discretion.
 
 Injunctive Relief
 
 19
 Section 21(d) of the Securities Exchange Act, 15 U.S.C. § 78u(d), authorizes the court to issue an injunction if, in addition to establishing a violation of the securities laws, the SEC demonstrates a reasonable likelihood of future violations. SEC v. Murphy, 626 F.2d 633, 655 (9th Cir.1980); see also Aaron v. SEC, 446 U.S. 680, 700-01 (1980).
 
 
 20
 We conclude there existed a sufficient factual basis for granting injunctive relief upon entry of default judgment. Prior to the default, Defendants had presented the facts of the case through a summary judgment motion. Moreover, if any insufficiency in the evidence had existed, it was cured by the SEC's subsequent showing of reasonable likelihood of future securities violations as to Sahgal, Rana/Vista's president and sole shareholder.
 
 V
 
 21
 Sahgal argues that the SEC failed to establish a violation of section 10b and Rule 10b-5 because it failed to show that (1) Sahgal used the jurisdictional means; (2) Sahgal made material misrepresentations; (3) Sahgal had the requisite scienter; and (4) injunctive relief was necessary to prevent future violations.[4]
 
 Jurisdictional Means
 
 22
 The evidence shows that Sahgal told a secretary/office manager for Rana/Vista to "issue the press release," and that she responded by sending the press release "to Business Wire for release to the media." The "P.R. Newswire," a service of Dow Jones News Service, and other media subsequently reported the information. Sahgal's argument that he did not use an instrumentality of commerce is frivolous. See United States v. Mackay, 491 F.2d 616, 619 (10th Cir.1973), cert. denied, 419 U.S. 1047 (1974) (setting forces in motion which foreseeably result in use of mails will suffice as use of instrumentality of commerce); see Alley v. Miramon, 614 F.2d 1372, 1379-80 (5th Cir.1980) (letter "written on [defendant's] encouragement" and mailed satisfied jurisdictional means).
 
 Material Misrepresentation by Sahgal
 
 23
 The release stated that Rana/Vista had made a "firm offer" to buy the company. This term has a specialized meaning that does not describe the offer for Superior. Furthermore, the trial court found that the release was false and misleading in other respects, such as in stating that Prudential-Bache Securities (Pru-Bache) and Rana/Vista announced the offer and that they (implying both) had ample financial resources to acquire Superior. Sahgal participated directly in these misrepresentations by reviewing and approving the press release after directing his secretary to prepare it. See SEC v. Management Dynamics, Inc., 515 F.2d 801, 805, 810 (2d Cir.1975). The district court's finding that Sahgal made material misrepresentations is not clearly erroneous.
 
 Scienter
 
 24
 A mens rea of recklessness satisfies the requirement of scienter in a civil action for damages under section 10(b) and Rule 10b-5. Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir.1990) (en banc), cert. denied, 111 S.Ct. 1621 (1991). The standard of recklessness to be shown is " 'a highly unreasonable omission, involving ... an extreme departure from the standards of ordinary care, ... which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.' " Id. at 1569 (quotations omitted).
 
 
 25
 Sahgal acted recklessly in several ways. He failed to clear the press release with Pru-Bache; he directed a secretary/office manager for Rana/Vista to respond to press inquiries using information Sahgal must have known was exaggerated, misleading and inaccurate; he failed to heed explanations of Pru-Bache's authorization process; and he exaggerated his own importance and his "relationships" with Superior's president and its counsel. We conclude that the evidence supports a finding that Sahgal was reckless with regard to the veracity of his representations.
 
 Likelihood of Future Violations
 
 26
 To establish a need for injunctive relief, the SEC must demonstrate a reasonable likelihood of recurrence. Murphy, 626 F.2d at 655. A court must assess the totality of the circumstances surrounding the defendant and the violations, including (1) the degree of scienter involved; (2) whether the violation is an isolated or recurrent incident; (3) whether a defendant continues to assert the legitimacy of his conduct; (4) whether because of his professional occupation the defendant might be in a position where future violations could be anticipated; and (5) the sincerity of his assurances against future violations. Id.
 
 
 27
 The district court's finding that injunctive relief was warranted was not clearly erroneous. Although Sahgal expressed remorse, "courts must be particularly skeptical about attaching any significance to contrition under protest." SEC v. Koracorp Indus., Inc., 575 F.2d 692, 698 (9th Cir.), cert. denied, 439 U.S. 953 (1978). Sahgal repeatedly expressed his intention to continue to operate in the complex and heavily regulated arena of securities and investments. Viewing Sahgal's conduct in the most charitable light, it is clear that he was not familiar with the complex and rigorous requirements of the federal securities laws, nor even aware that he needed to be familiar with them, and there is no evidence that he now accepts his obligation to comply with them and supervise the compliance of his agents. Rather, he still maintains that his conduct was blameless.
 
 
 28
 Having examined Sahgal's contentions in detail after thoroughly examining the record, we reject the remainder of his claims as meritless.
 
 CONCLUSION
 
 29
 The orders imposing sanctions for filing the summary judgment motion and for asserting the trial defenses are REVERSED. The discovery sanction is VACATED and REMANDED for consideration of Appellants' culpability. In all other respects, the judgment and rulings of the district court are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendants also contend that they were not given an opportunity to be heard on the matter. This argument is meritless. Bretz represented Defendants at the hearing in which the issue was discussed and he presented Defendants' arguments
 
 
 [2]
 The district court also precluded Bretz from assisting Sahgal outside the courtroom. We can find no prejudice from this ruling, even if in error
 
 
 [3]
 Regardless of whether the alternative sanctions were properly imposed, we may still use them to measure the effectiveness of lesser sanctions than default
 
 
 [4]
 The claim that the SEC failed to establish reliance and injury from the misrepresentations is addressed separately in the opinion filed contemporaneously with this disposition