**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lawrence D. HARTFORD, aka "Larry,"**
**Defendant-Appellant,**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dale BOWDOIN, Defendant-Appellant,**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mike NEWTON, Defendant-Appellant.**

**Nos. 73–1704, 73–1738, 73–1955.**

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1974.

Rehearing Denied in No. 73–1704
March 19, 1974.

Tuttle, Circuit Judge, filed opinion concurring in part and dissenting in part.

George F. Tubb (court-appointed), Larry G. Turner, Gainesville, Fla., for defendants-appellants in 73–1704 and 73–1955.

William H. Stafford, Jr., U. S. Atty., Robert L. Crongeyer, Jr., Asst. U. S. Atty., Pensacola, Fla., for plaintiff-appellee in all cases.

Lynn M. LoPucki, Gainesville, Fla. (court-appointed), for defendant-appellant in 73–1738.

Before TUTTLE, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

In these consolidated appeals from convictions, pursuant to guilty pleas, of violations of federal narcotics statutes,[1] the common issue presented for resolution is the validity of the respective sentences imposed by the district court upon the three appellants. After a careful review of the record in each case, we vacate the sentences imposed on appellants Hartford and Bowdoin and affirm the judgment as to appellant Newton.

These three appeals arise from a similar factual setting. Each appellant was indicted by a grand jury on several charges of violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. § 801 et seq. Subsequently each defendant entered a guilty plea as to one count in the respective multi-count indictments. Hartford, who pleaded guilty to possession of a controlled substance in violation of 21 U.S.C.A. § 844, was sentenced under the Federal Youth Corrections Act, 18 U.S.C.A. § 5010, with a maximum four-year term of confinement, instead of receiving the penalty imposed by the substantive narcotics statute, which provides a maximum punishment of one year imprisonment, a $5,000 fine, or both. He is now in the unusual posture of contending that he should have received no more than the maximum sentence provided by the substantive statute, section 844, rather than the potentially longer, indeterminate sentence under the FYCA. Appellant Bowdoin entered a guilty plea to the charge of unlawful distribution of LSD in violation of 21 U.S.C.A. § 841 and received a five-year sentence, followed by a special parole term of two years, as provided by section 841. Newton, in turn, admitted having unlawfully distributed hashish in violation of sec-

---

1. Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. §§ 841, 844.

tion 841, and was likewise sentenced to the maximum incarceration term of five years, with the subsequent two year parole term.

■■ Since we have determined that different dispositions are warranted in these cases, each appellant's particular circumstances will be addressed individually. Nonetheless, certain well-established legal principles, pertinent to each of the instant cases, merit discussion at the outset. It is axiomatic that the broad discretion vested in trial judges in sentencing narrowly circumscribes the role of appellate courts in scrutinizing trial courts' final determinations. This historic deference, premised in great measure on the proximity of the trial judge to the criminal defendant, thus affording the court the opportunity of first hand observations and impressions which together with many other considerations must be weighed in passing sentence, continues unabated and remains uncompromised in any way by the result we reach today. For what we examine is not the severity or duration *per se* of the sentences meted out by the district court, since it is undisputed that the sanction imposed in each case *sub judice* was within the statutorily-prescribed maximum. Appellate modification of a statutorily-authorized sentence, however, is an entirely different matter than the careful scrutiny of the *judicial process* by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the contrary, a necessary incident of what has always been appropriate appellate review of criminal cases. *See, e. g.,* Townsend v. Burke, 1948, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690; Williams v. New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. Accordingly, we need not address the substantial body of precedent prohibiting the substitution of an appellate court's predilections for the broad discretion rightfully reposed in the trial judge, inasmuch as we fully reaffirm that principle. We address instead the common issue raised by these appeals, namely whether the district judge abused his discretion by mechanically imposing the maximum allowable sentence rather than abiding by the judicially approved policy of "individualizing sentences." Williams v. New York, *supra,* at 248.

### United States v. Hartford
### No. 73–1704

■ In the course of imposing sentence on Hartford, the trial judge stated that the one-year maximum sentence prescribed by section 844 of Title 21 for possession of a controlled substance was simply insufficient punishment in this case. "You could be sentenced to one year since this is a misdemeanor. I do not feel that time is sufficient." Consequently, the judge sentenced Hartford under the Federal Youth Corrections Act (FYCA), under which a defendant receives an indeterminate sentence not to exceed four years. 18 U.S.C.A. § 5017(c). By so doing, the judge employed the FYCA in a manner repugnant to the ameliorative congressional purpose underlying the statute, namely to allow correctional rehabilitation for youthful offenders, not to mete out retributive punishment. *See* Frye v. Moran, W.D.Tex.1969, 302 F.Supp. 1291. Moreover, by opining that the legislatively-prescribed *maximum* penalty for this misdemeanor was insufficient punishment for Hartford, the court acted inconsistently with the authoritative determination by Congress with respect to the appropriateness of particular penalties. As a result, by his dissatisfaction with the congressional regulatory scheme embodied in the Drug Abuse Act, the court fell into grave error by utilizing a salutary sentencing procedure, the FYCA, for punitive purposes clearly at odds with Congress' purpose. *See* Cunningham v. United States, 5 Cir. 1958, 256 F.2d 467, 471–472.

We therefore conclude that under the circumstances here existing Hartford's sentencing under the FYCA was erroneous. Accordingly, we vacate with in-

structions to resentence Hartford pursuant to the express provisions of 21 U.S.C.A. § 844.

Vacated with Directions.

### United States v. Bowdoin
### No. 72–1738

■ Unlike Hartford, Bowdoin, a nineteen year old first offender, was not afforded the benefit of sentencing pursuant to the FYCA. Instead, the district judge accepted Bowdoin's plea to having violated 21 U.S.C.A. § 841 for unlawful *distribution* of narcotics and thereupon imposed the maximum sentence of five years, with a two-year special parole term. Assuming without deciding that a trial judge is vested with discretion to ignore the FYCA, assuming its applicability, and to mete out the maximum sentence prescribed by Congress, nonetheless, the process by which the judge determines the appropriate sentence must constitute the exercise of judicial discretion demanded in each particular case.

■ A careful examination of the record in the instant case reveals an abuse of judicial discretion by· a clear showing that the· judge pursued a rigid policy of imposing the maximum sentence for a particular category of offenses, namely narcotics violations. During the colloquy between the court and Bowdoin's counsel at sentencing, the judge stated: "This is one man that is lucky that he only has a maximum of a five year sentence because if there was any more I would give it to him." Thereafter, when counsel expressed concern over possible inaccuracies in the pre-sentence report potentially enhancing the sentence imposed on Bowdoin, the court responded: "I am telling you right now it wouldn't make any difference if there were fifty other charges. If this man pleaded guilty to distributing LSD he would get the maximum penalty which he got." These remarks, as well as others in the record, reflect a rigid sentencing policy based solely on the crime with which the defendant is charged. Such a policy is under no reasonable conception an exercise of judicial discretion. As the Sixth Circuit has stated, "[a] trial court which fashions an inflexible practice in sentencing contradicts the judicially approved policy in favor of 'individualizing sentences.'" United States v. Daniels, 6 Cir. 1971, 446 F.2d 967, 971, *quoting* Williams v. New York, 1949, 337 U.S. 241, 248, 69 S.Ct. 1079, 93 L.Ed. 1337. *See also* United States v. Baker, 2 Cir. 1973, 487 F.2d 360, where the court said: "We reaffirm our disapproval of statements by a trial judge reflecting a fixed sentencing policy based on the category of crime rather than on the individualized record of the defendant"; and Woosley v. United States, 8 Cir. 1973, 478 F.2d 139 where it is stated: "A mechanical approach to sentencing . . . ignores the Supreme Court's decree that sentencing be tailored to fit the offender." Not only is a mechanical sentencing formula an abdication of judicial responsibility, United States v. McCoy, 1970, 139 U.S.App.D.C. 60, 429 F.2d 739, but it also runs counter to the considered judgment of Congress in prescribing a non-mandatory maximum sentence. Section 841, under which Bowdoin was sentenced, simply provides a maximum term of confinement for "not more than five years," and thus "is an express legislative sanction . . . of meting out sentences substantially less than five years in prison . . . where there are appropriate mitigating circumstances." United States v. Daniels, *supra*, 446 F.2d at 971–972. From this express legislative authorization there is clearly evidenced an "implied legislative will to impose a lesser sentence where appropriate." Id. at 972. In Bowdoin's sentencing proceedings, the court overtly revealed its misunderstanding of this implied legislative will when the judge remarked: "The Congress of the United States provides for a five year sentence. That is what he got, and if I could give him anymore I would give it to him." The statute, of course, actually provides for a *maximum* sentence of five years

which is non-mandatory in nature. Thus, by routinely entering the maximum sentence, without considering relevant factors,[2] the court failed to exercise that "high order of discretion to fit the sentence to the crime and to the defendant", Stevens v. Warden, 4 Cir. 1967, 382 F.2d 429, 433, and thereby failed to abide by the implied congressional mandate to frame the punishment to address the particular circumstances of the individual defendant. United States v. Daniels, *supra*.

We therefore vacate and remand for resentencing.

### *United States v. Newton*
### *No. 73–1955*

█ Like Bowdoin, Newton was sentenced to five years imprisonment with a special parole term upon his plea of guilty to unlawfully distributing hashish, a controlled substance, in violation of 21 U.S.C.A. § 841. Unlike Bowdoin, however, the judge in sentencing Newton evidenced no fixed predisposition concerning the appropriate sentence and, indeed, permitted testimony at the sentencing proceedings by both Newton's father and minister, despite the existence of an apparently comprehensive pre-sentence report which the judge, by his remarks, had already considered.[3]

The only alleged irregularities cited by Newton are the judge's remark that there may be no such thing as "rehabilitation . . . for people who push drugs" and the court's consideration of Newton's prior use of cocaine in fixing the maximum sentence allowable by law. Although we hardly approve of the judge's statement concerning rehabilitative prospects for drug offenders, we cannot reasonably infer from this solitary remark that the judge failed to exercise appropriate discretion in framing the particular punishment. The record on appeal indicates that the judge had examined the pre-sentence report in addition to correspondence from the appellant's minister, and before sentencing, the judge allowed considerable testimony concerning Newton's particular circumstances. This course of conduct is completely inconsistent with the theory that the court mechanically entered a predetermined sentence.

█ Moreover, the objection to the judge's consideration of Newton's involvement with cocaine is simply without merit. No complaint is made, nor could there be, that this information relied upon by the sentencing judge was false or otherwise improper. *See* Townsend v. Burke, 1948, 334 U.S. 736, 68 S. Ct. 1252, 92 L.Ed. 1690. On the contrary, such relevant and accurate information contained in a pre-sentence report is an integral part of those factors which the sentencing judge should consider in framing the appropriate sanction. Williams v. New York, *supra*, at 249–251. In addition, the judge did not, as Newton suggests, improperly prevent him from exercising his allocution rights protected by Rule 32(a)(1), F.R. Crim.P. The record clearly reflects that both Newton and his counsel were afforded more than ample opportunity to relate their viewpoints fully. In fact, the judge in finally cutting off Newton's counsel was concerned only with the attorney's suggestion that, since the court was considering Newton's admission to the probation officer of prior contact with cocaine, defense counsel might possibly be unwise in advising a client convicted of crime to reveal all relevant information to an officer preparing a pre-sentence report. Under these circumstances, there simply was no improper curtailment of allocution.

---

2. That the judge was disinterested in relevant individual factors in Bowdoin's case is unmistakably evident from his remark that "[i]t doesn't make any difference what goes in the pre-sentence report. I don't even need a pre-sentence report in this case."

3. In view of his remarks, the judge had apparently already reviewed a letter previously received from Newton's minister, as well as the report of the probation officer, wherein Newton's prior involvement with cocaine, in addition to the present offense of distributing hashish, was indicated.

We are therefore constrained, despite its severity, to affirm the judgment imposed in this case. As we have indicated, whatever sanction an appellate tribunal would fashion were it the sentencing authority is completely irrelevant, so long as the trial judge, as in this case, properly carried out the process of exercising its lawful discretion.

Affirmed.

TUTTLE, Circuit Judge (concurring in part and dissenting in part):

I agree that the sentences in the *Hartford* and *Bowdoin* cases must be reversed as determined by the majority. With deference, however, I do not agree that the sentence in the *Newton* case can be affirmed. I would also vacate that sentence.

These three cases of violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A. § 801 et seq. came on for sentencing before the same trial judge on the same day. The majority placed its holding reversing *Hartford* and *Bowdoin* on the grounds that the trial court abused its discretion by pursuing a rigid policy of imposing the maximum sentence for narcotic violations.[1] The court made this determination by relying on the trial court's comments during the sentencing. I think that by the very nature of things, if we find that the trial court in cases number one and two demonstrated that it was following a uniform policy of meting out maximum sentences for drug violators, it must necessarily follow that this policy embraced as well case number three, a drug violator's case in which the convicted person was sentenced on the same day.

Moreover, I cannot believe that the only time an abuse of sentencing discretion may be shown is when the judge's statements indicate that he had a predetermined sentencing policy. There is room for proof of circumstances *demonstrating* abuse of discretion between revealing admissions by the judge and the line where the sentencing discretion of the court will not be reviewed by an appellate court.

I think this general proposition is bolstered by the following circumstances that existed in the *Newton* case: (1) Newton is a first offender in a drug conviction not involving an addicting narcotic; (2) the type of controlled substance, hashish, and the amount involved, 1.7 grams, are recognized by Congress as not falling within the same class as hard narcotics such as heroin; (3) Newton's situation invites consideration of rehabilitation through the Youth Correction Act, 18 U.S.C.A. § 4209 and § 5010; (4) there was a substantial showing that Newton is substantially rehabilitated as evidenced by activities within his church, and as related by his minister; (5) the trial court imposed the maximum punishment. When these factors are compared to the matching circumstances of *Hartford* and *Bowdoin* and the trial court's improper sentencing disposition in those two cases, it seems clear to me that this defendant was likewise treated in a manner that cannot be condoned.

In *Hartford* and *Bowdoin,* to be sure, the trial judge's own comments announced his refusal to consider individual circumstances but an intention to apply a mechanical policy of giving a maximum sentence for drug offenders. By judicially noticing the comments made in those two cases, the trial judge's statement in this case indicating that he believed there was no such thing as "rehabilitation . . . for people who push drugs" is no longer isolated verbiage, but, instead, highlights the trial court's predisposition in all drug cases.

---

1. The majority words the reversal in *Hartford* to condemn the use of the Federal Youth Correction Act for retributive sentencing. But it is clear that the court was reversing the improper manner in which the trial court imposed, by choosing whatever mode—the Y.C.A. or the adult statutory penalty—would allow it its policy of maximum sentences for drug violators.

On this point, the en banc decision by the Court of Appeals of the Eighth Circuit in Woosley v. United States, 478 F. 2d 139 (8 Cir. 1973), is particularly persuasive. The defendant in that case had refused induction into the military. The court vacated his sentence on the finding that the sentencing judge had a predisposition, established by his sentences in previous cases, to impose the same harsh sentence in selective service cases.

. . . Restricting consideration to sentences in the Eastern Division of Missouri, we understand the statements of the government attorney indicate that the sentencing judge sentenced eight violators who refused induction to maximum prison terms, although one sentence permitted possible early parole under Section 4208(a). Clearly, the judge's policy in the St. Louis (Eastern) Division called for five-year sentences for all young men convicted of refusing induction into the military.

The situation here is similar. The cases of *Hartford* and *Bowdoin* substantiate a predetermined policy by the judge to impose the maximum sentence possible in violations of the Controlled Substance Act.[2]

The majority, here, relies on the court's stated consideration of the presentence report and the testimony by Newton's father and minister to rebut this charge of predisposition on the part of the trial court, but the district judge in *Woosley* had also indicated that he examined the probation report and the letters submitted by the defendant. I do not think the sentencing judge's stated consideration of materials relevant to his sentencing here negates the showing of such a mechanical approach to sentencing, which the majority found present in the other two cases disposed of at the same time.

The Supreme Court pointed out in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949):

Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence. Id. at 248.

The court, in these cases, by focusing on the crime, ignored this rehabilitative process.

Furthermore, with deference to the views of the majority, I am of the opinion that the trial court sharply and prejudicially curtailed Newton's right of allocution. Rule 32(a)(1) of the Federal Rules of Criminal Procedure[3] now codifies the holding in Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L. Ed.2d 670 (1961), and Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L. Ed.2d 417 (1962), providing, under the former Rule 32, that the defendant should *personally* be allowed to speak in his own behalf before sentencing.[4] In this case, Newton's allocution opportunity was severely limited by the district court. The judge allowed Newton's father and minister to make statements, but then the court proceeded to restrict Newton himself:

MR. TURNER:

Would you tell The Court at this time very briefly in your own words how you got involved in hashish, marijuana.

---

2. See United States v. Charles, 460 F.2d 1093, 1094–1095 (6th Cir. 1972) (imposing maximum sentences in selective service cases) ; United States v. Daniels, 446 F.2d 967 (6th Cir. 1971) (imposing maximum sentences in selective service cases); United States v. McCoy, 139 U.S.App.D.C. 60, 429 F.2d 739, 742–743 (1970) (policy of sentencing life -imprisonment for armed robbery).

3. The text of the Rule reads:
Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant, and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf, and to present any information in mitigation of punishment.

4. Moore suggests that this right flows from the inherent powers of the sentencing court and is not dependent upon the allocution provision of Rule 32(a)(1). 8 Moore's Federal Practice ¶ 32.05.

THE COURT:

If he has already told this to the probation officer I do not see any need to go into it again. Hasn't this information already been furnished?

MR. TURNER:

May I then sum up very quickly what I would like for him to say to The Court?

THE COURT:

Yes, if Mr. Newton wishes to add anything that has not been given to the probation officer, I would be glad to hear it.

Newton then continued to explain about his rehabilitation through the Church and the counseling of young people. He *never*, however, ventured into an explanation of how he became involved in drugs in the first place.

The court cannot instruct a defendant not to refer to matters covered by the pre-sentence report in his right to allocution. The language of the Supreme Court in *Green*, supra, is instructive:

The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting

eloquence, speak for himself. Green v. United States, 365 U.S. 301, 304.

Further, it is clear that the use of the word "cocaine" in the pre-sentence report impaled Newton beyond help in the mind of the sentencing judge.[5]

The manner in which Newton's right of allocution was restricted when the trial court told him he would not listen to anything that appeared in the probation officer's report clearly impinged upon his ability to explain not only his relationship to the disposition by him of 1.7 grams of hashish (which the trial court mistakenly spoke of as "marijuana") but also possibly impinged upon his ability to explain to the trial court, assuming the court had not otherwise a predetermined view as to the sentence to be meted out, his relationship to what appears to have been an "involve[ment] to some extent with cocaine."

This curtailment of Newton's right of allocution is made even more serious because of the fact that it appears that any possibility of the trial court's making an exception to its standard procedure of giving a maximum sentence to a drug offender was gone completely when the court said, "He has admitted it, I will hear nothing further."

---

5. The dialogue at the sentencing hearing states:
 THE COURT:
   There are over five hundred fifty thousand addicts walking the streets, most of them young people. This man not only has been involved with marijuana, he has been involved with cocaine.
 MR. TURNER:
   Your Honor, there is no charge involving this young man with cocaine.
 THE COURT:
   This man has told the probation officer that he was involved to some extent with cocaine. Isn't that not correct?
 THE DEFENDANT:
   That was the first time that I was but I had just become involved under the encouragement of friends.
 THE COURT:
   Under the encouragement of friends you became involved in cocaine which is one of the most dangerous substances the world has ever known.

It is the judgment of The Court, Mike Newton, that you be committed to the custody of the Attorney General or his authorized representative to be imprisoned for a period of five years or until you are otherwise discharged by due course of law, together with a special parole term of two years upon your release from confinement.
   Custody is remanded to the United States Marshal.
    *    *    *    *    *
 MR. TURNER:
   I understand The Court is not considering his having admitted to having used cocaine in imposing sentence.
 THE COURT:
   I am considering it. It reflects on his character. It reflects on his ability to cope with society and it should reflect on his sentence. He has admitted it. I will hear nothing further. Custody is remanded to the United States Marshal.

It appears that Newton's counsel was attempting to preserve a Fifth Amendment right for his client in the sense that he was protesting against the court's using an admission given under such circumstances from being considered in fixing sentence when he said, "I understand the court is not considering his having admitted to having used cocaine in imposing sentence." The court clearly overruled such proposition by saying, "I am considering it, it reflects on his character, it reflects on his ability to cope with society and it should reflect on his sentence."

This use of an admission made to a probation officer without the benefit of warning as to his Fifth Amendment rights and after counsel had objected to its being utilized as an ingredient for the court to consider in fixing the sentence, seems to be in direct conflict with the principle announced by this court in Bertrand v. United States, 467 F.2d 901 (5 Cir. 1972). In that case the court said:

> "The transcript shows that the trial judge pressed petitioner to answer questions regarding a completely unrelated offense with which he was not charged. The petitioner declined to answer, partly because it 'would require a bit of explanation on the matter and I had rather refrain from doing it, if I may'. It is apparent from the transcript of the sentencing hearing that the petitioner's lack of 'cooperation' irked the trial judge and induced him to impose the maximum sentence for the crime, five years."

*Bertrand* makes it plain that it is a violation of a defendant's Fifth Amendment rights for him to be compelled to answer questions from the bench as to other unrelated crimes. It is to be borne in mind here that no charge was ever made against Newton for whatever connection he had with cocaine.

Furthermore, the court's asking defendant if it was not true that he had admitted his involvement with the cocaine and later utilizing this admission to aid him in affixing the sentence seems to run contrary to this Court's decision in Thomas v. United States, 368 F.2d 941 (5th Cir. 1966).

Although each of the grounds above, independently, undermine the judge's sentencing procedure, they stand with a further factor so to infect the sentencing process with irregularities that I am convinced that Newton's sentence should be vacated.[6] Under 18 U.S.C.A. § 4209 the district court had the discretion to sentence Newton under the Federal Youth Correction Act but declined that sentencing alternative. That refusal of itself is, of course, not an abuse of discretion.[7] However, the Court of Appeals for the Fourth Circuit in United States v. Wilson, 450 F.2d 495 (4th Cir. 1971), noted that under some sets of circumstances the district court should reconsider its failure to sentence under section 4209.

> . . . In the absence of aggravating circumstances or any explanation by the Judge at sentencing, we are constrained to express our sense of

6. *Cf.*, United States v. Malcolm, 432 F.2d 809, 818 (2d Cir. 1970) (". . . the error here, unlike *Hill*, was not simply an admission of formal requirements of Rule 32(a), nor does it stand alone. Rather, it occurred in the context of other aggravating circumstances which so infect the sentencing process with material irregularities, confusion, false assumptions and misinformation that the sentence must be vacated as the product of a denial of due process.").

7. If the defendant were under 22 years of age and therefore falling directly under 18

U.S.C.A. § 5010, some courts including this court have held that the court would have had specifically to express reasons for not sentencing under subdivision (b) or (c). United States v. Schenker, 5th Cir., 486 F.2d 318 [1973]; United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152 (1973) (en banc); Williams v. United States, 476 F.2d 970 (3rd Cir. 1973). The Supreme Court has granted certiorari in a Seventh Circuit case which held to the contrary. United States v. Dorszynski, 484 F.2d 849 (1973), cert. granted, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973).

perplexity and concern over the seeming severity of the three-year prison sentence for an offense involving less than $100.00. This is especially so in light of the good reputation the youthful appellant bears among his neighbors, co-workers, and employer, the absence of any previous criminal experience, and the probation officer's recommendation that he be granted probation. The disparity between the crime and the punishment is baffling. Certainly it appears that section 4209 could have been appropriately applied or a lighter sentence given. *Id.* at 498.

Although such decisions have to be determined on an individual basis, the situation here seems substantially like that referred above (if we assume that the trial court cannot focus solely on the nature of the offense but on the individual defendant). Newton is a first offender with no prior criminal experience. Although his conviction is for selling, the record reveals that he was not "dealing" but selling a small quantity to a friend. The substance involved is hashish, not a hard, addicting narcotic. The defendant has been working by himself and through his church in counseling young persons in his home community against the use of drugs. His minister confirmed the strong commitment Newton had made to his church and religion. The minister spoke for the congregation in supporting a sincere belief in Newton's rehabilitation.

I do not, of course, intend to suggest that this Court should direct that the trial court give a lighter sentence. I mention these circumstances only as an added consideration which has convinced me that the present sentence should be set aside and upon resentencing the trial court should give consideration to a more promising rehabilitative sentencing alternative, which Congress had in mind in enacting the Youth Correction Act.

I would vacate the sentence on Mike Newton as well as those of the other two defendants and remand to the district court.