**UNITED STATES of America, Appellee,**

v.

**William H. JACKSON, Appellant.**

**No. 69, Docket 76–1157.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 1, 1976.

Decided Sept. 20, 1976.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, David J. Gottlieb, New York City, on the brief), for appellant.

David S. Gould, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., Eastern District of New York, Bernard J. Fried, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and FEINBERG and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

After a non-jury trial in the United States District Court for the Eastern District of New York, before John R. Bartels, *Judge*, William H. Jackson was convicted in March 1976 of obstruction of the mails in violation of 18 U.S.C. § 1701,[1] which provides a maximum sentence of imprisonment for "not more than six months." Judge Bartels committed Jackson to the custody of the Attorney General for a study in order to obtain "more detailed information as a basis for determining the sentence to be imposed." 18 U.S.C. § 4208(b). Jackson, who is on bail pending appeal, asserts that such a study may only be ordered when the statutory penalty permitted is imprisonment for more than a year. We reject this contention and affirm the judgment of conviction.

Because appellant attacks only his sentence we may state the facts briefly. James Brown moved into Jackson's home on Staten Island, New York, as a boarder in 1971. Brown received welfare checks there by mail, and enlisted Jackson's help in cashing them. In 1972, Brown suffered a heart attack and was hospitalized for several months, during which Jackson assumed full responsibility for cashing Brown's checks. After his release from the hospital, Brown again lived with Jackson and cashed his checks for a few months as he did before. Brown then disappeared suddenly, leaving no forwarding address. Nine months thereafter, a series of government checks began to arrive at Jackson's house, addressed to Brown. Jackson signed both his and Brown's names to the checks, cashed them and deposited the proceeds in his wife's bank account. One of the checks was the basis of Jackson's conviction.

At the sentencing hearing, defense counsel suggested that Jackson had mistakenly

1. The statute provides:

Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

believed that the check-cashing authorization he obtained during Brown's illness had entitled him to cash Brown's checks.[2] Counsel also referred to Jackson's "extensive mental history" contained in the probation report, which apparently included several periods of institutionalization. In addition, Jackson had a history of problems with alcohol. With these factors in mind, Judge Bartels ordered a study under section 4208(b) to aid him in sentencing.

Appellant argues that the sentencing procedure followed by Judge Bartels was improper. The argument is primarily based upon the language of section 4208, reproduced in the margin.[3] Subsection (a) of section 4208 permits a sentencing court to accelerate eligibility for parole in ways there described, but only when in the court's opinion "the ends of justice and best interests of the public require that *the defendant be sentenced to imprisonment for a term exceeding one year.*" (Emphasis added.) Subsection (b) of section 4208 allows a sentencing judge, if he wishes further information to commit a defendant "for a study as described in subsection (c) . . . ." The first two sentences of the latter section provide:

Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a), the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish to the board of parole a summary report together with any recommendations which in his opinion would

2. This had been the substance of Jackson's trial testimony, which Judge Bartels rejected in his findings in a post-trial memorandum opinion, dated December 12, 1975.

3. 18 U.S.C. § 4208 provides:

(a) *Upon* entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, *or* (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.

(b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. *The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion:* (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from the date of original commitment under this section.

(c) Upon commitment of a prisoner sentenced to imprisonment under the provisions of subsection (a), the Director, under such regulations as the Attorney General may prescribe, shall cause a complete study to be made of the prisoner and shall furnish to the board of parole a summary report together with any recommendations which in his opinion would be helpful in determining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. The board of parole may make such other investigations as it may deem necessary.

It shall be the duty of the various probation officers and government bureaus and agencies to furnish the board of parole information concerning the prisoner, and, whenever not incompatible with the public interest, their views and recommendations with respect to the parole disposition of his case.

(d) The board of parole having jurisdiction of the parolee may promulgate rules and regulations for the supervision, discharge from supervision, or recommitment of paroled prisoners.

be helpful in determining the suitability of the prisoner for parole. This report may include but shall not be limited to data regarding the prisoner's previous delinquency or criminal experience, pertinent circumstances of his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent.

According to appellant, the reference in subsection (b) to "a study as described in subsection (c)" and the cross-reference in subsection (c) to subsection (a) combine to incorporate into subsection (b) the "exceeding one year" limitation of subsection (a). In other words, a judge cannot order a diagnostic study if the defendant cannot be sentenced "to imprisonment for a term exceeding one year." Since the maximum imprisonment for Jackson's crime was "not more than six months," Judge Bartels erred in ordering a study.

Appellant supports this statutory argument by references to legislative history and by an appeal to "common sense." Section 4208 was enacted as part of Pub.L. 85–752, which provided new emphasis on, and flexibility in, sentencing procedures and was, in appellant's view, intended principally to remedy sentencing disparities.[4] But the likelihood of serious disparity in sentences with a one-year maximum is small. Some studies may take as long as six months to complete. There is little benefit in committing a defendant for such a study for a crime punishable by no more than imprisonment for one year. To urge a contrary position in this case is absurd because the study may consume the entire possible six-months maximum sentence.

This would be a meaningless waste of resources.

We have carefully considered these contentions and conclude that they are incorrect. Although subsection (b) was enacted with subsection (a) as part of the same statute, the two subsections address different problems. Subsection (b) permits a judge to obtain information for imposing sentence, and requires a report to be made to the judge. In contrast, subsection (a) deals with eligibility for parole, which occurs only after sentence has been imposed. This subsection envisions a report to be made to the parole board. There is an obvious relationship between subsections (a) and (c) because both deal with parole. But there is no such connection between subsections (a) and (b), and the reference in the latter to the "study as described in subsection (c)" does not create one. That reference is merely a shorthand description of the study and does not incorporate the "exceeding one year" limitation of subsection (a) into subsection (b), which does not otherwise contain such a condition.[5]

Moreover, legislative history and policy do not lead to appellant's interpretation. We agree with appellant that Congress was concerned with disparity in long sentences. But that was not the only focus of Pub.L. 85–752. Congress authorized a section 4208(b) reported whenever "a difficult medical, psychiatric, sex, or rehabilitative problem may be involved." 1958 U.S.Code Cong. & Admin.News, at p. 3898. Congress intended subsection (b), which was considered an improvement in sentencing procedures,[6] to be available to judges who thought they needed the aid it provided.

4. Thus, in addition to creating new sentencing options, the statute provided for sentencing institutes and joint councils on sentencing. See 28 U.S.C. § 334.

5. We are cited to *Corey v. United States,* 375 U.S. 169, 173 n.13, 84 S.Ct. 298, 302, 11 L.Ed.2d 229 (1963), where the Court stated that it was "plain" the introductory clause of subsection (a) "serve[s] as an introduction to all of § 4208." But the holding in *Corey* was not concerned with this question. *Corey* decided the important issue that a defendant committed

under subsection (b) could wait until the completion of the report and the imposition of *final* sentence to file a notice of appeal. The footnote was merely an aside confirming that the original commitment to the Attorney General under subsection (b) was also a "judgment of conviction," sufficient to support appeal (as in Jackson's case) under the final judgment rule. *Corey* did not address the availability of a § 4208 study for misdemeanants.

6. See Carter, Use of Section 4208(b) and (c), Commitment for Study, 27 F.R.D. 307 (1960).

We agree with the observation of the Third Circuit—the only other court of appeals to consider the issue now before us—that "[t]here is no basis for assuming that difficult sentencing decisions occur only when the permissible sentence exceeds one year." *United States v. Lancer,* 508 F.2d 719, 728 (3d Cir.) (en banc), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975).

This case is a good example of the need for flexibility. Judge Bartels obviously thought that Jackson, who apparently had a problem with alcohol, might need special conditions of probation,[7] which might extend for five years even though only a six-month prison term could be imposed.[8] The study may assist the judge in making that decision as well as in deciding whether to impose a prison term of short duration. The study, therefore, is not purposeless, even if it does consume a substantial portion, or all, of the six-month maximum period of incarceration that the judge could impose as a final sentence. True, appellant argues that if a study does take six months to complete, a probation sentence would be meaningless in a case like this because the judge could not impose any further prison term for violation of probation. But we do not regard the argument as persuasive. A judge can both request the report to be expedited and also make clear that he will not extend the three-month study period, so that some part of the possible six-month incarceration remains as a threat. And, entirely apart from the effect of a possible fine in some cases, a defendant is likely to desire to avoid the status of probation violator.

Appellant also argues that if the report ultimately shows that no custody is war-ranted, appellant will have been incarcerated for no purpose. But even though in this situation section 4208(b) will not have avoided a needless incarceration, neither will it likely have caused it. Judge Bartels, when ordering the study, probably at least doubted seriously whether probation alone would suffice. The odds are therefore good that he would have imposed some prison sentence if section 4208(b) were not available. Moreover, if at the outset of a study a judge senses that only a short prison term will be necessary, he can, as already indicated, request an expedited study. Certainly, there is no claim here that the judge was using the study procedure for punitive purposes. *Cf. United States v. Hartford,* 489 F.2d 652 (5th Cir. 1974), which we distinguished in *United States v. Torun,* 537 F.2d 661 (2d Cir. 1976).

In short, we see no good reason for tying the hands of a trial judge who seeks information he considers pertinent to the imposition of sentence. Accord, *United States v. Lancer, supra.* We reject the restrictive interpretation of section 4208(b) that appellant seeks. The judgment of conviction is affirmed.

---

**7.** At the sentencing hearing the judge said:

I think he's got to start immediately going to Alcoholics Anonymous or something like that, because his life is going to be ruined unless he is able to discard this horrible habit of resorting to alcoholism and escape from the daily problems that face him. In other words, *it's like a disease, and he isn't doing anything about it.*

**8.** 18 U.S.C. § 3651.