NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ANDRES RUIZ-SOLIS, *Appellant.*

No. 1 CA-CR 24-0360

FILED 06-03-2026

---

Appeal from the Superior Court in Mohave County
No. S8015CR202300644
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED IN PART, MODIFIED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine Davis
*Counsel for Appellee*

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster joined and Judge Veronika Fabian joined as to all but paragraphs 26–28.  Judge Fabian also specially concurred.

---

**M O R S E**, Judge:

¶1        Andres Ruiz-Solis appeals his convictions and sentences for two counts each of armed robbery, aggravated robbery, and aggravated assault, all designated dangerous offenses.  For the following reasons, we affirm the convictions, and affirm the imposition of consecutive sentences, but modify the sentences imposed.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In 2023, Ruiz-Solis, age 17, and a co-defendant approached two other juveniles, "Joseph"[1] and "Michael," at a public park.  With his finger on the trigger, Ruiz-Solis pressed a handgun equipped with a laser-pointer sight into Joseph's neck and ordered him to surrender his belongings.  Joseph handed over a fanny pack containing small personal items.  While Ruiz-Solis kept his gun against Joseph's neck, his accomplice took Michael's backpack, which contained cash and electronics.  No shots were fired and nobody was physically injured.  The stolen property was worth slightly more than $200.  Both victims testified they were scared during the incident.  A friend of Ruiz-Solis and the victim videoed the incident, and Ruiz-Solis posted the video online.

¶3        Before trial, the superior court granted Ruiz-Solis's motion in limine to preclude any mention of a local Bullhead City gang—"Bullhead Killas" ("BHK").  At trial, the prosecutor asked one victim where he had seen the video posted on Instagram.  The victim responded "I seen it on BHK." Based on his motion in limine, Ruiz-Solis objected and moved for a mistrial.  The superior court agreed the reference should not have been made, but denied the motion for mistrial, reasoning it "can't imagine the jury would

---

[1]        We use pseudonyms in place of victims' names to protect their identities.  Ariz. R. Sup. Ct. 111(i).

know what BHK means." Ruiz-Solis opted against a curative instruction to avoid highlighting the remark.

¶4        The jury convicted Ruiz-Solis on all counts as to each victim, finding the offenses dangerous. The jury also found multiple aggravating factors. The superior court sentenced Ruiz-Solis to aggravated prison terms for each count. Because "each victim suffered a separate harm," the superior court ordered that while all counts relating to each individual victim should be served concurrently, the sentence counts involving different victims would be served consecutively, resulting in a combined term of 42 years in prison.

¶5        Ruiz-Solis timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033.

## DISCUSSION

¶6        Ruiz-Solis raises five claims on appeal: (1) improper reliance on a statutorily barred aggravating factor; (2) errors in the application of other aggravating factors; (3) disproportionate sentencings; (4) failure to grant a mistrial; and (5) a request for sentence reduction under A.R.S. § 13-4037.

## I.        Aggravating Factors.

¶7        Ruiz-Solis argues the superior court erred by using aggravating factors which were also underlying elements of the charged offenses.

¶8        Because Ruiz-Solis did not object at sentencing, this Court reviews for fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 138, 140, ¶¶ 1, 12 (2018). To prevail, he must show the superior court committed error, the error was fundamental, and that it prejudiced him. *Id.* at 142, ¶ 21.

¶9        "We review de novo whether a particular aggravating factor may be used by a court to aggravate a sentence." *State v. Dunbar*, 249 Ariz. 37, 51, ¶ 41 (App. 2020). An aggravating circumstance relates to the commission of a crime in a manner that "increases its guilt or enormity, or adds to its injurious consequences." *State v. Elliget*, 177 Ariz. 32, 36 (App. 1993) (quoting *Aggravation*, Black's Law Dictionary (rev. 5th ed. 1979)). When "an aggravated sentence would have been imposed even if the improper aggravator had not been used," no fundamental error occurs. *State v. Munninger*, 213 Ariz. 393, 397, ¶ 12 (App. 2006).

¶10  Ruiz-Solis fails to establish error, much less fundamental error. As an aggravating factor, infliction or threatened infliction of serious physical injury exceeds the force required to establish the elements of robbery and aggravated assault. A.R.S. § 13-701(D)(1). Robbery requires only the use or threat of *any* force in connection with taking another's property. A.R.S. § 13-1901 (defining "force" as any physical act directed against the victim); *State v. Anderson*, 210 Ariz. 327, 342–43, ¶¶ 54–55 (2005). Similarly, the crime of aggravated assault requires proof that Ruiz-Solis caused the victims to fear "imminent physical injury." A.R.S. § 13-1204(B). The aggravating factor requires more, i.e., the threat or fear of "serious physical injury." A.R.S. § 13-701(D)(1). Because the aggravating factor requires more than the underlying offense, the superior court did not err. *See State v. Germain*, 150 Ariz. 287, 290 (App. 1986) (stating the superior court may consider conduct as an aggravating factor where the degree of misconduct rises beyond what is necessary to establish an element of the offense); *see also State v. Bly*, 127 Ariz. 370, 372–73 (1980) (permitting use of deadly weapon as an aggravator for armed robbery).

¶11  We also disagree with Ruiz-Solis's argument that the presence of an accomplice aggravating factor is improper. Here, the co-defendant's active role in this offense—patting down and taking a victim's property—exceeded the mere assistance (including providing the means or opportunity for Ruiz-Solis to commit the crime) necessary to establish accomplice liability. *See* A.R.S. § 13-301; § 13-1903(A) (stating that aggravated robbery requires "aid" from a present accomplice). A reasonable jury could conclude that the accomplice's active participation added to the injury and the superior court did not err in considering this aggravating factor. *State v. Long*, 207 Ariz. 140, 147–48, ¶¶ 39–40 (App. 2004); *see also State v. Allen*, 253 Ariz. 306, 362, ¶ 215 (2022) (stating the presence of an accomplice is enough to support the aggravating factor, even if they are not liable based on their actions); *see also State v. Ruggiero*, 211 Ariz. 262, 268, ¶ 28 (App. 2005) (allowing accomplice aggravator where the accomplice helped carry out the crime); *State v. Molina*, 211 Ariz. 130, 138–39, ¶ 33 (App. 2005) (finding superior court did not double count facts used to meet the elements of the offense to impose an aggravated sentence).

¶12  We also reject Ruiz-Solis's challenge to the sufficiency of the evidence for the remaining aggravating factors: (1) value of the property taken; (2) committing of the offense for reasons of pecuniary gain; and (3) physical, emotional, or financial harm to the victims. A.R.S. § 13-701(D)(3), (6), and (9).

¶13 First, A.R.S. § 13-701(D)(3) does not prescribe a specific minimum monetary value for the "value of the property taken" aggravator. The statute's plain language contains no threshold. *Contrast* A.R.S. § 13--701(D)(3), *with, e.g.*, A.R.S. § 13-1602(B) (listing a dollar value of damage required for a crime). Because the elements of the robbery offense only require that something be taken, it is within the jury's province to conclude that the value of the things taken in this case (personal items and electronics worth slightly more than $200) established an aggravating factor. *See State v. Gunches*, 225 Ariz. 22, 25, ¶ 14 (2010) (stating we view the facts and evidence in a light most favorable to sustaining the verdict); *Germain*, 150 Ariz. at 290.

¶14 Second, Ruiz-Solis argues that because pecuniary gain is inherent in robbery, the superior court erred in applying it as an aggravating factor. *See* A.R.S. § 13-701(D)(6); § 13-1902 (defining robbery). This is not true. *See State v. Lee*, 189 Ariz. 608, 620 (1997) ("[P]ecuniary gain is not synonymous with robbery."). Sufficient evidence supports the superior court's finding that Ruiz-Solis was motivated by pecuniary gain. The fact that pecuniary gain may be a motivation for the robbery does not restrict the superior court from using it as an aggravating factor. *See id.* (rejecting the "argument that finding pecuniary gain as an aggravating circumstance is unconstitutional where it repeats an element" of armed robbery).

¶15 Third, the victims testified they were "scared," "in shock," and described the incident as "very scary." One victim "froze," and the other feared for his life. This testimony demonstrates more than minimal distress and supports the superior court's decision to use emotional harm as an aggravating factor. *See* A.R.S. 13-701(D)(9); *State v. Coulter*, 236 Ariz. 270, 274, ¶ 7 (2014) ("Emotional harm . . . encompasses a variety of mental states, including fright, fear, sadness, sorrow, despondency, anxiety, humiliation, depression," and others.) (quoting Restatement (Third) of Torts § 45 cmt. a (2012)); *see also State v. Williams*, 1 CA-CR 21-0592, 2022 WL 4475325, at *3–4, ¶¶ 14–16 (Ariz. App. Sept. 27, 2022) (mem. decision) (affirming emotional harm as an aggravating factor after the "victim suffered emotional harm, including fright, fear, anxiety, and stress" at the time of the incident).

¶16 Moreover, even if the superior court erred in considering any individual aggravating factor, Ruiz-Solis fails to meet his burden of demonstrating prejudice. *See Escalante*, 245 Ariz. at 142, ¶ 21. Ruiz-Solis does not argue fundamental error and, in essence, asks us to speculate that his sentence would have been more lenient if we eliminated any aggravating factor. But speculation is not enough to establish prejudice

5

under fundamental-error review. *See Munninger*, 213 Ariz. at 397–98, ¶¶ 14–15 (stating defendants cannot show prejudice by speculating a sentence would have been lower absent error).

**¶17** Here, the presence of multiple aggravating factors and the superior court's statements at sentencing overcome any speculation that the superior court might have imposed a lesser sentence if any one aggravator were eliminated. *E.g., id.* at 397, ¶¶ 11–14. The superior court expressly stated it was imposing maximum sentences "based on the nature of the offense and based on the number of aggravating circumstances," not on any single factor. Where an aggravated sentence would have been imposed even without the challenged factor, no fundamental, prejudicial error occurs. *Id.* at ¶ 12. Given the number of aggravators and the superior court's sentencing remarks, Ruiz-Solis has not shown a reasonable likelihood that the absence of any one aggravator would have led to a different sentence. *See State v. Henderson*, 210 Ariz. 561, 569–70, ¶¶ 28–32 (2005).

## II. Dangerous Offense.

**¶18** Ruiz-Solis contends the State erred in charging each offense as "dangerous" because the statutory language overlaps with that of an aggravating factor. *See* A.R.S. §§ 13-105(13) (defining "Dangerous Offense" as: "the intentional or knowing infliction of serious physical injury"), and -701(D)(1) (using the language "[i]nfliction or threatened infliction of serious physical injury").

**¶19** This argument also fails. The "dangerous offense" definition includes an alternative—"threatening exhibition of a deadly weapon or dangerous instrument"—that is distinct from the "infliction of serious physical injury" language. *See* A.R.S. § 13-105(13). The enhancement here was based on the use or threatening exhibition of a deadly weapon, not threatened infliction of serious physical injury. Accordingly, the superior court did not err. *See State v. Garcia*, 219 Ariz. 104, 104–05, ¶ 1 (App. 2008) (stating the "serious physical injury" language is separate from the "threatening exhibition of a deadly weapon or dangerous instrument" language); *see also Germain*, 150 Ariz. at 290 (stating conduct may support an aggravating factor as long as the conduct rises beyond that necessary to establish an offense's elements).

**III.        Mistrial.**

**¶20**        Ruiz-Solis argues the superior court erred by denying his motion for mistrial after a victim mentioned "BHK" in violation of the motion in limine.

**¶21**        We review the denial of a motion for mistrial for an abuse of discretion. *State v. Strong*, 258 Ariz. 184, 215, ¶ 149 (2024). A mistrial should be granted when it appears that justice will be thwarted. *State v. Adamson*, 136 Ariz. 250, 262 (1983). "And because the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003).

**¶22**        Prior to trial, Ruiz-Solis moved to prevent the State from eliciting evidence regarding his association with the BHK gang. Because the State had not filed gang charges or enhancements, the superior court granted the motion. During testimony, one victim referenced "BHK" when explaining how he saw a video of the incident on Instagram. There was no discussion in front of the jury regarding BHK as a gang or that Ruiz-Solis was a member of BHK. Ruiz-Solis objected and moved for a mistrial. The superior court agreed that BHK should not be discussed but denied the mistrial motion, reasoning that "the jury would [not] know what BHK means."

**¶23**        We find no error. The superior court judge was best positioned to determine whether a lone reference to "BHK"—without additional context—could improperly influence the jury. In this light, and considering the substantial evidence of guilt, we see no abuse of discretion. *See id.* at 570, ¶ 46 (finding no abuse of discretion and affirming the denial of a motion for mistrial based on the "overwhelming evidence" against the defendant, even if the testimony was error); *State v. Hoskins*, 199 Ariz. 127, 142–43, ¶¶ 57–58 (2000) (affirming the denial of a motion for a mistrial, even though the admitted testimony constituted error, because the record contained strong evidence of guilt, and there was no reasonable probability "that the verdict was affected" by the testimony).

**IV.        Cruel and Unusual Punishment.**

**¶24**        Ruiz-Solis argues his 42-year sentence is cruel and unusual and asks this Court to reduce it. *See* U.S. Const., amend. VIII; Ariz. Const., Art. II, § 15; A.R.S. § 13-4037 (vesting this Court with authority to amend and reduce sentences in certain circumstances). We review de novo whether a sentence violates the Eighth Amendment. *State v. Soto-Fong*, 250

7

Ariz. 1, 4, ¶ 6 (2020). A sentence violates the Eighth Amendment when it is "grossly disproportionate" to the crime. *State v. Berger*, 212 Ariz. 473, 476, ¶ 12 (2006). We do "not consider the imposition of consecutive sentences in a proportionality inquiry" under the Eighth Amendment. *Soto-Fong*, 250 Ariz. at 8, ¶ 29 (quoting *Berger*, 212 Ariz. at 479, ¶ 27).

**¶25**      Each sentence falls within statutory limits. *See* A.R.S. § 13-704 ("Dangerous offenders; sentencing"). We do not consider the total sentence but rather focus on whether each individual sentence is disproportionate to the crimes. *Soto-Fong*, 250 Ariz. at 8, ¶ 29. The superior court considered the aggravating and mitigating factors when making its sentencing decision. In light of the superior court's wide discretion in determining the sentence, we find no error. *See State v. Schlarp*, 25 Ariz. App. 85, 87 (1975) ("A sentence which is within statutory limits will be upheld unless under the circumstances it is so clearly excessive as to constitute an abuse of discretion."); *see also Berger*, 212 Ariz. at 483, ¶ 50 (affirming a 200-year combined sentence).

**¶26**      Relatedly, Ruiz-Solis challenges the court's decision to impose consecutive sentences as an "inflexible and mechanical" application of an arbitrary sentencing rule—which he argues is akin to a practice we rejected in *State v. Fillmore*, 187 Ariz. 174 (App. 1996). He claims the superior court "expressly disavowed" exercising its discretion by referencing a specific sentencing philosophy and blaming the sentencing code. Ruiz-Solis misstates the court's reasoning.

**¶27**      The court repeatedly acknowledged its broad sentencing discretion. It discussed the sentencing code to emphasize the importance of avoiding arbitrary sentencing, be it harsher or more lenient. The court explained the code imposed a mandatory prison sentence of a presumptive length that the court then had to adjust after balancing aggravating and mitigating factors. The jury found that the multiple aggravating factors outweighed the mitigating ones. The court discussed the factors at length, explaining why the crime was planned and intentional, not a fleeting mistake. The court then imposed consecutive sentences and discussed its sentencing philosophy of holding defendants accountable for each committed crime. It emphasized the importance of doing so especially where multiple victims suffered separate harms. Thus, the court's explanation of its sentencing philosophy both emphasized the statutory scheme and the court's clearly articulated reasoning for imposing consecutive sentences on the facts of this specific case.

**¶28** Because of the court's reasoning, *Fillmore* is distinguishable. In that case, the court imposed 39 consecutive sentences, totaling 298.75 years, for a defendant who ran a "chop-shop." 187 Ariz. at 183–84. The State urged concurrent sentences, but the court expressly, and incorrectly, relied on a nonexistent legislative presumption in favor of consecutive sentencing. *Id.* at 184–85. In contrast, the sentencing judge here acknowledged and emphasized that he had discretion to impose concurrent or consecutive sentences. Ruiz-Solis has not shown any error.

## V.        Sentence Reduction.

**¶29** Finally, Ruiz-Solis asks this Court to use its power under A.R.S. § 13-4037 to amend his sentence. On appeal from a sentence on the grounds it is excessive, the court "shall have the power to reduce the extent or duration of the punishment imposed, if, in its opinion, the conviction is proper, but the punishment imposed is greater than under the circumstances of the case ought to be inflicted." A.R.S. § 13-4037(B). This authority should be used "with great caution and exercised only when it clearly appears that the sentence is too severe." *State v. Hunt*, 9 Ariz. App. 484, 485 (1969); *see also Long*, 207 Ariz. at 146–47, ¶ 27 (urging careful analysis of the facts in cases where the sentence appears "severe").

**¶30** The overall sentence—42 years for double armed robbery without shots fired or injuries—is harsh. The court acknowledged it, and so do we. In this case, Ruiz-Solis shined a firearm's laser sight at a juvenile victim and then held the firearm to the victim's neck, all while he and an accomplice robbed that victim and another juvenile victim of their personal belongings. But Ruiz-Solis was only 17 years old at the time of the crime, *State ex rel. Mitchell v. Cooper*, 256 Ariz. 1, 10, ¶ 35 (2023) (noting that youth is a mitigating factor in sentencing), no one was hurt, *State v. DePiano*, 187 Ariz. 41, 49 (App. 1995) (recognizing lack of injury to the victim as a mitigating factor), *vacated in part by* 187 Ariz. 27 (1996), and the total property loss was a little over $200, *see State v. Flores*, 108 Ariz. 231, 232 (1972) (reducing sentence in an armed burglary case involving today's equivalent of $700). We find this to be one of those rare cases where it is proper for us to exercise our discretion under Section 13-4037 to amend the sentence. *State v. Telavera*, 76 Ariz. 183, 186–87 (1953) (reducing sentence in a case involving a 17-year-old offender); *State v. Fierro*, 101 Ariz. 118, 121 (1966) (same); *Flores*, 108 Ariz. at 232 (same for a 19-year-old).

**¶31** In doing so, we solicited and received victim input, to ensure compliance with the Victim's Bill of Rights. A.R.S. §§ 13-4401–4443. One victim responded. We have carefully considered the victim's input, the

circumstances of the offenses, the aggravating and mitigating factors, and the superior court's rationale for imposing the sentences. We conclude that the total sentence of 42 years in prison, consisting of consecutive maximum 21-year sentences, was too severe. *Long*, 207 Ariz. at 145–46, ¶ 27 ("[W]e conduct an individualized analysis, examining the specific circumstances of this case."). We agree, however, with the superior court that (1) aggravated sentences are warranted, and (2) Ruis-Soliz should serve consecutive sentences for the crimes he committed against each victim. Therefore, we reduce the total sentence imposed to 23 years in prison, consisting of slightly aggravated terms of 11.5 years for each count, with all counts relating to each individual victim served concurrently, but the sentences for counts involving each victim served consecutive to the counts for the other victim. We affirm the sentence in all other respects.

## CONCLUSION

**¶32**        We affirm the convictions and modify the sentences as set forth above.

**F A B I A N**, Judge, specially concurring:

**¶33**        I concur with the majority as to all but paragraphs 26–28 and concur in the result because I believe that reducing the superior court's sentence is the best method of resolving this case. However, I write separately to emphasize that a "sentencing philosophy" of rigidly imposing consecutive sentences with respect to each victim is an abuse of discretion.

**¶34**        "The legislature by statute, the prosecutor by charge, and the jury by conviction set the sentencing boundaries for the judge." *State v. Fillmore*, 187 Ariz. 174, 185 (App. 1996). However, the "ultimate responsibility" lies with the superior court to fit "the punishment to the circumstances of the particular crime and individual defendant." *State v. Thurlow*, 148 Ariz. 16, 19 (1986). This responsibility is the essence of discretion. *See State v. Miller*, 120 Ariz. 224, 228 (1978) ("In tailoring a sentence to an individual, the trial judge should consider not only the circumstances of the offense but also the character and past conduct of a defendant, so that the punishment may be set in accordance with defendant's general character and the nature of the crime committed."); *see also United States v. Garrett*, 680 F.2d 650, 652 (9th Cir. 1982) ("The sentencing process is intended to allow the sentencing judge to take individual circumstances into consideration while adhering to the sentencing standards provided by statute.").

¶35 Application of a rigid sentencing philosophy is inherently inconsistent with the requirement that a judge exercise discretion by taking into account individual circumstances. *See Woosley v. United States*, 478 F.2d 139, 144 (8th Cir. 1973) ("A mechanical approach to sentencing . . . ignores the Supreme Court's decree that sentencing be tailored to fit the offender."). For this reason, it is an abuse of discretion to automatically impose a maximum sentence for certain classes of crimes. *See, e.g., United States v. Hartford,* 489 F.2d 652, 655 (5th Cir. 1974) ("A careful examination of the record in the instant case reveals an abuse of judicial discretion by a clear showing that the judge pursued a rigid policy of imposing the maximum sentence for a particular category of offenses, namely narcotics violations."); *United States v. Barker*, 771 F.2d 1362, 1366 (9th Cir. 1985) (finding abuse of discretion where several factors indicated that the district court's imposition of sentence was more "mechanistic than measured" (citation modified)).

¶36 Applying this principle in *State v. Fillmore*, this Court held that the superior court's "application of the premise that each victim was entitled to a separate, consecutive sentence resembles in its rigidity the disfavored approach of imposing maximum sentences for certain classes of crimes." 187 Ariz. at 185. In *Fillmore*, the defendant was convicted of 39 felonies including theft, burglary, and trafficking stolen property for running an illegal chop-shop. *Id.* at 176-77. The superior court in that case imposed concurrent sentences for counts involving the same victim, but otherwise imposed consecutive sentences for counts involving separate victims. *Id.* at 177. The total sentence imposed was 298.25 years. *Id.*

¶37 As the majority correctly notes, the *Fillmore* court determined that the superior court erred in relying on a nonexistent legislative presumption for consecutive sentences. *Fillmore*, 187 Ariz. at 183-84. But this Court went on to hold that the superior court's "unbending application of this premise, even in the face of an admittedly extravagant sentence, was a clear abuse of discretion." *Id.* at 185. The *Fillmore* court explained that the superior court's sentencing philosophy was "more aptly characterized as a refusal to exercise discretion," which "is, in and of itself, an abuse of discretion." *Id.*; *accord State v. Garza,* 192 Ariz. 171, 175 ¶ 16 (1998).

¶38      A very harsh and potentially unconscionable sentence should only be reached by "tailoring a sentence to an individual." *Miller*, 120 Ariz. at 228. It should not be the result of a rigid sentencing philosophy.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR